[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-10852

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00281-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY KEITH YUKNAVICH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 11, 2005)**

Before BLACK and WILSON, Circuit Judges, and NANGLE[*], District Judge.

BLACK, Circuit Judge:

_____

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of
Missouri, sitting by designation.

Yuknavich appeals the district court's denial of his motion to suppress evidence seized by probation officers from his house. On appeal, Yuknavich makes two arguments: (1) the district court erred in reviewing the search under a "special needs plus reasonableness" standard, and (2) the district court erred when it ruled in the alternative that Yuknavich consented to the search. We now affirm the denial of Yuknavich's motion to suppress.

## I. BACKGROUND

A. *State Court*

In the fall of 1998, Yuknavich was discovered printing out pictures of child pornography at work and using his work computer to access pornographic images involving children. On March 18, 1999, Yuknavich pled guilty in the Superior Court of Cobb County, Georgia to four counts of exploitation of a child and one count of distributing obscene material. He received a sentence of seven years probation.

According to the terms of his probation, he could "not use the internet at any time unless work related during work hours." Because of the nature of his offense, he was also subject to a list of special conditions for child abusers/sex offenders, including the following:

6.  Defendant will continue in treatment/counseling for the

duration of his/her probation unless officially discharged by the probation supervisor or by the court.

7.     Defendant is prohibited from working, volunteering, participating in or having any direct association whatsoever with any day care center, children's recreation program/sports/athletic teams, children's education facility/schools/school bus, Girl Scouts, Boy Scouts, church youth programs, church youth choirs, teaching youth religious classes, youth programs, YMCA, YWCA, and any other volunteer/program/activities/community service work involving direct contact with children under the age of 16.

. . . .

9.     Defendant shall not initiate contact nor continue uninitiated contact with a child under the age of 16.

. . . .

13.     Defendant is to be supervised the entire period of his/her probation for the express purpose of protecting children.

. . . .

15.     Defendant shall not take into his/her body [any] controlled substance or mind altering drug including alcohol, except pursuant to a [] doctor's prescription.

. . . .

17.      Defendant shall not purchase or possess any pornographic, sexually explicit or stimulating material which is performed, photographed or recorded.

The terms of Yuknavich's probation did not expressly require him to submit to

searches of his home or person at the behest of probation or law enforcement

3

officers. Yuknavich's primary probation officer was Marsha Goldstein.[2]

Goldstein was often assisted by Don Spencer. While visiting Yuknavich on

January 30, 2002, Goldstein and Spencer discovered child pornography on a

computer in Yuknavich's house.

B.    *Federal Court*

As a result of the child pornography found by Goldstein and Spencer,

Yuknavich was indicted in the United States District Court for the Northern

District of Georgia on five counts of receiving child pornography, in violation of

18 U.S.C. § 2252(a)(2)(A). Yuknavich filed a motion to suppress the evidence

retrieved from his computer.

1.    *Suppression Hearing*

On July 22, 2003, Magistrate Judge Janet F. King held a hearing on

Yuknavich's motion to suppress. The only witnesses to testify at the hearing were

Goldstein and Spencer.

In addition to the events of January 30, Goldstein and Spencer also testified

about Yuknavich's conduct prior to that day. In October of 1999, a few months

after his probation began, Yuknavich put a bid on a house and Goldstein reminded

him that he was not to live near a school or a day care center, and it would be best

---

[2]Goldstein began supervising Yuknavich in September of 1999.

if he did not live in an area with many young children. Yuknavich told her there were probably "some" but not "many" kids in the neighborhood. However, when Goldstein recalled her first visit to the house, she said, "it was obvious that there were small children everywhere." Although not related to any specific activity by Yuknavich, soon thereafter, a parent in the neighborhood discovered he was on a child sex offender registry and urged Goldstein to have him move.

In January of 2000, a parent in the neighborhood informed Goldstein that Yuknavich had set up an E-mail account at the local library. When questioned about it, Yuknavich told Goldstein it was for job searching. Goldstein pointed out, however, that Yuknavich already had a job and had not been looking for a new one at the time. The following month, Yuknavich revealed to Goldstein that he had recently helped set up equipment for a rock concert for teenagers at his church, then stayed for the show. Goldstein told him that was inappropriate and, if he wanted to be in those types of situations, he would need to be monitored by someone trained to supervise him.

On March 21, 2000, Yuknavich sought permission to go on a church retreat involving many activities for kids. Goldstein suggested he talk to his therapist about his desire to go and discuss the possibility of increasing his medication. In response, Yuknavich revealed he had not been taking his medication and that he

5

had masturbated on three occasions to a fantasy of the young boy he previously assaulted.[3] He also told the officers, on several occasions, he was not "invested" in his therapy. Given the reaction to his living in that neighborhood and his recent behavior, Goldstein strongly encouraged him to move to a new area, which he eventually did later that year.

In February of 2001, after he moved, Yuknavich's therapist told Goldstein that Yuknavich had gotten into trouble at his church. The pastor had agreed to help him with job résumés on the church's computer, but then learned Yuknavich had been using the computer by himself and had even signed up with an Internet service provider. Yuknavich eventually terminated the account.

During a subsequent home visit, the officers saw that Yuknavich had a twelve-pack of beer in his kitchen. When confronted, he claimed he did not know having beer was against the terms of his probation. During this same visit, Yuknavich admitted he had obtained a computer. He said he bought it for his son, but then discovered his ex-wife had already bought him one, so he kept it. The officers checked to see if the computer had a modem, but it did not. The officers

---

[3]In 1975, Yuknavich, at the age of 19, was convicted of Lewd Assault on a Male Child in the State of Florida for taking a ten-year-old boy into a closet and performing oral sex on him. Yuknavich received a sentence of five years probation.

would occasionally check, with Yuknavich's permission, to see what was on the computer. It is unclear how often these searches would occur or how they were conducted.

On January 30, 2002, Goldstein called Yuknavich to see if he was working and where, so they could set up a meeting. He informed them he was at home for the day because he had a phone interview at 2:00 pm. The officers arrived at Yuknavich's house between 10:30 and 11:00 am. They were wearing street clothes, did not have weapons of any kind, and did not have handcuffs. It took Yuknavich ten minutes to open the door and, when he did, he was shirtless. He explained he was shirtless because he was about to take a shower. Spencer felt Yuknavich was acting "very nervous." After sitting down in the living room and talking briefly, the three of them moved into another area of the house.[4] As they moved through the house, the officers observed several computers and other computer equipment in a spare bedroom, including one with an external modem connected to a phone line. The officers were unaware Yuknavich's computer had a modem.

---

[4]The officers gave conflicting accounts as to how they came to leave the living room. Goldstein said they asked to see Yuknavich's computer; he consented; and he led them into a bedroom containing his computers. Spencer says Yuknavich told them he was doing laundry and when he got up to go to the washing machine, they followed him. As will be discussed, our analysis is not affected by the differing versions of events.

7

Spencer asked Yuknavich to sit down at the computer and click on "Start" and then "Documents." When Yuknavich moved the mouse the screen saver disappeared and it became apparent that the computer was connected to the Internet and files were being downloaded. The Documents file contained several JPEG files. Spencer asked him to open one of the JPEG files that had been recently viewed. Yuknavich complied. The file Yuknavich opened contained a picture of a nude young boy with an erection. At this point, Yuknavich admitted he had been downloading child pornography for the past month and a half and asked for a second chance. Goldstein told him to stop talking and Spencer told him to step away from the computer. He was not read his Miranda rights and was not placed under arrest.[5]

Goldstein phoned a fellow probation officer and requested a search warrant be obtained for Yuknavich's computers. In the meantime, Goldstein was advised by a Sergeant at the police department to obtain Yuknavich's consent to seize his computers. Goldstein wrote out a short consent form which read, "I hereby agree that Probation Officers M. Goldstein and Don Spencer may take my computers and related media to be analyzed by the Cobb County Police Department."

---

[5] Goldstein testified that the probation officers "don't make arrests."

Yuknavich signed the consent form. A later search of the computer pursuant to a warrant revealed 535 images of child pornography.

### 2. *Denial of Motion to Suppress*

In Yuknavich's motion to suppress, he argued that while the officers had a right to visit him at his house as part of his probation, they could not conduct a search without a warrant, probable cause and an exception to the warrant requirement, or his consent—none of which they had. The Government contended Yuknavich had given his consent.

The magistrate judge recommended Yuknavich's motion to suppress be denied because Yuknavich's expectation of privacy in his residence, especially in his computer use and Internet access, was greatly reduced if not eliminated. Thus, according to the magistrate judge, the probation officers needed reasonable suspicion, and not a warrant based on probable cause, before searching Yuknavich's computer.[6]

In finding the officers had reasonable suspicion to search Yuknavich's computer, the magistrate judge noted Yuknavich's two previous improper

---

[6]The magistrate judge, although admitting it was not addressing "the issue of consent in any detail," found the Government failed to establish valid consent. The magistrate judge concluded: "Under the totality of the circumstances, there is insufficient evidence to find that Defendant voluntarily consented as contrasted to acquiescing to the requests of his probation officers."

acquisitions of an E-mail account; his moving into a neighborhood populated with young children; his participating in events involving minors at his church; his fantasies about his prior victim; and on the day in question, his delay in opening the door, his shirtlessness when opening it, his nervousness, and his possession of a modem and multiple computers. The magistrate judge continued: "Once the probation officers observed the illicit material on the computer, not only did they have a reasonable suspicion of a probation violation, there was probable cause justifying seizure of the computers and the related media materials . . . . In this case, the pornographic and sexually explicit materials constituted contraband just like drugs or firearms and should have been, as they were, seized." The district court adopted the magistrate judge's report and recommendation, denying the motion to suppress, except for the magistrate judge's conclusion that Yuknavich failed to consent to the search.[7]

After his motion to suppress was denied, Yuknavich entered a conditional plea of guilty to all five counts of receiving child pornography, pending the outcome of the current appeal. If Yuknavich's motion to suppress is granted, he will be allowed to withdraw his guilty plea.

---

[7]Because our decision does not turn on whether Yuknavich consented to the search, we do not discuss the district court's holding on that issue.

10

### 3.     *Sentencing*

In addition to Yuknavich's conviction for Lewd Assault on a Male Child in Florida, the pre-sentence investigation report recounted another incident involving Yuknavich and inappropriate conduct with minors. On January 11, 1995, while Yuknavich was at the Kennesaw State College Library with his young son, he approached a 15-year-old male and asked him if he and his girlfriend engaged in sexual relations. As Yuknavich asked the question, he simulated sexual intercourse using his finger and his palm. Yuknavich's wife entered the library and interrupted the incident. Campus police were called and Yuknavich told them he was tempted by the young boy's presence and was not sure how far he would have gone if his wife had not arrived. Campus police issued him a criminal trespass warning and advised him not to return. The next day, Yuknavich was questioned by Cobb County police: he acknowledged he was a pedophile who was attracted to boys aged 13 to 16.

Under the sentencing guidelines, Yuknavich had a criminal history category of III and an offense level of 18. His guideline range was 33–41 months' imprisonment. The district court sentenced him to 41 months' imprisonment.

## II.  STANDARD OF REVIEW

We review a district court's denial of a motion to suppress de novo, reviewing all evidence in the light most favorable to the party that prevailed in the district court.  *United States v. Gonzalez*, 71 F.3d 819, 824 (11th Cir. 1996) (citations omitted).

## III.  DISCUSSION

"[I]t is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 3169 (1987) (second alteration in original) (citation and internal quotations omitted).  We must decide whether Yuknavich's Fourth Amendment rights were conditioned to the point where his computer was subject to a warrantless search based on reasonable suspicion.

A.    Knights *Balancing Test*

The search of Yuknavich's computer easily passes muster as reasonable under the balancing test set out in *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587 (2001).[8]  In *Knights*, the Supreme Court examined the reasonableness of a

---

[8]The Government urges us to uphold the search of Yuknavich's computer based on the "special needs plus reasonableness" exception to the warrant requirement established in *Griffin*, 483 U.S. at 875, 107 S. Ct. at 3169.  In *Griffin*, a Wisconsin regulation permitted a probation

search for investigative purposes of a probationer by a law enforcement officer. *Id.* at 115–16, 122 S. Ct. at 589–90.

"[T]he reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights,* 534 U.S. at 118–19, 122 S. Ct. at 591 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300 (1999)). In this analysis, the presence of a search condition is but one "salient circumstance" to consider. *Id.* at 118, 122 S. Ct. at 591; *see also United States v. Keith*, 375 F.3d 346, 350 (5th Cir. 2004) (upholding a warrantless search of a probationer's house

---

officer to conduct a warrantless search of a probationer's home if there were "reasonable grounds" to believe the probationer was in violation of his probation. *Id.* at 870–71, 107 S. Ct. at 3167. The Supreme Court upheld a search conducted pursuant to the regulation because the regulation was justified by the "special needs" of a state's probation system. *Id.* at 876, 107 S. Ct. at 3169–70. Despite the lack of a regulation or search condition in this case, the Government contends we can still rely on the "special needs" exception of *Griffin*. The Third, Fifth, and Ninth Circuits have upheld warrantless searches of probationers based on reasonable suspicion where no regulation or search condition was present. *See United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992); *United States v. Scott*, 678 F.2d 32, 34–35 (5th Cir. 1982); *Latta v. Fitzharris*, 521 F.2d 246, 250 (9th Cir. 1975).

Yuknavich interprets *Griffin* as creating an exception to the warrant requirement *only* when (1) the probationer is subject to a regulation or search condition that requires him to submit to warrantless searches, and (2) the probation officer possesses reasonable suspicion. Because the first condition is not met here, Yuknavich argues *Griffin* does not apply.

Although no circuit has adopted Yuknavich's reading of *Griffin*, and the only support he provides for his position is a single district court opinion, *United States v. Trzaska*, 866 F. Supp. 98, 103–04 (E.D.N.Y. 1994), we do not need to resolve the issue today because we affirm the district court based on *Knights*.

in the absence of a state regulation or search condition where the probation officer had reasonable suspicion).

Concerning a probationer's privacy, the Supreme Court has stated:

Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. Probation is one point on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.

*Knights*, 534 U.S. at 119, 122 S. Ct. at 591 (citations, internal quotations, and ellipsis omitted).

The government has a considerable interest in supervising probationers. "[T]he very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." *Id.* at 120, 122 S. Ct. at 592 (citations and internal quotations omitted). Unlike the ordinary criminal, "probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence" because they are aware that at a probation revocation hearing, proof beyond a reasonable doubt and the right to a jury trial do not apply. *Id.*, 122 S. Ct. at 592 (citations omitted). In *Knights*, "the balance of these considerations require[d] no more than reasonable suspicion to conduct a search of th[e] probationer's house." *Id.* at 121, 122 S. Ct. at 592.

14

The only major difference between the case before us and *Knights* is that Knights' probation agreement contained a provision explicitly requiring him to submit to warrantless searches, whereas no such provision is present here. We must consider whether, in this case, the lack of search condition upsets the *Knights* balancing test so as to require more than reasonable suspicion to justify a search of Yuknavich's computer. *Cf. United States v. Brown*, 346 F.3d 808, 812 (8th Cir. 2003) (considering "whether, given the scope of Brown's probationary condition, the presence of the additional personnel sway[ed] the [*Knights*] balancing test").

It is important to note that the search we are reviewing is limited to that of Yuknavich's computer.[9] Therefore, we must consider his expectation of privacy in his computer and computer related activities, i.e., accessing the Internet.

First, we are mindful of the crime for which Yuknavich was on probation. It goes without saying that possession of child pornography is not a victimless

_____

[9]Yuknavich argues that he never asked the officers to follow him out of the living room. He contends they were just "roaming throughout the house." In reference to how the officers were able to see Yuknavich's computer, Goldstein testified she asked to see his computer and he took them into the bedroom, while Spencer stated: "[H]e wanted to take the clothes out of the dryer while we were there, so I just walked back—we all walked back there with him while he did that." Admittedly, Spencer's testimony is slightly ambiguous as to whether Yuknavich intended for the officers to follow him; however, the district court adopted the magistrate judge's finding that Spencer's testimony indicated the officers followed Yuknavich through the house at Yuknavich's request. We cannot say this factual finding was clearly erroneous. Therefore, it makes no difference whether Goldstein's or Spencer's version of the events is more accurate: either way, the officers locating themselves in a position where they could see inside the bedroom did not constitute a search.

15

crime. A child somewhere was used to produce the images downloaded by Yuknavich, in large part, because individuals like Yuknavich exist to download the images. "Sex offenders are a serious threat in this Nation . . . . States thus have a vital interest in rehabilitating convicted sex offenders." *McKune v. Lile*, 536 U.S. 24, 32–33, 122 S. Ct. 2017, 2024 (2002) (plurality opinion).

Yuknavich's Internet usage was explicitly restricted to "work related purposes" during "work hours." Given this limitation, Yuknavich should have always been prepared for three questions: Do you have a computer? If yes, can you access the Internet? If yes, what are you doing on-line? Not only should he have been prepared to answer those questions, but he also should have been prepared for the officers to conduct their own research to find the answers. If the Internet restriction did not provide the officers with a greater ability to examine the life of Timothy Yuknavich, then there would be little reason for it to exist.

Yuknavich's expectation of privacy was further reduced because of his actions while on probation. He violated the terms of his release several times and often placed himself in situations that were inappropriate for a convicted child sex offender. By virtue of these infractions and inappropriate behavior, the officers were justified in monitoring him more closely and thereby imposing greater infringements on his privacy. Yuknavich was given chance after chance after

chance and as a result of all of those chances he should have necessarily expected closer monitoring, especially when he bought a computer—Yuknavich knew the terms of his probation severely restricted his ability to access the Internet. For an individual, who was on probation for possessing child pornography on his computer, who admitted he had masturbated to fantasies of a young boy he had sexually assaulted, who had already twice accessed the Internet without anyone's knowledge, to purchase a computer and not expect his probation officers to see red flags everywhere is inconceivable.

In sum, assuming the lack of a search condition heightened Yuknavich's expectation of privacy, it did not sway the *Knights* balancing test such that the probation officers needed more than reasonable suspicion to conduct a search of Yuknavich's computer.[10]

C.      *Reasonable Suspicion*

Reasonable suspicion consists of "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Knights*, 534 U.S. at 121, 122 S. Ct. at 592 (citation omitted). "When making a determination of reasonable suspicion, we must look at the

---

[10]We offer no opinion on whether a warrantless search based on less than reasonable suspicion could be reasonable under the Fourth Amendment.

17

totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. It is clear that an inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required." *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) (citations and internal quotations omitted). The officer must "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir. 2003) (quoting *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990)).

To determine whether the officers had reasonable suspicion to search Yuknavich's computer, we must take stock of everything they knew before searching. They had knowledge of Yuknavich's two prior convictions, and the restriction placed on his Internet usage. They also knew that while on probation he repeatedly walked close to, and sometimes crossed, the line of what was acceptable behavior, including twice accessing the Internet unsupervised. On the day in question, Yuknavich delayed ten minutes in opening the door—time not spent getting fully dressed because he was shirtless when he opened it—and he acted very nervous. Finally, and most damaging, the officers saw a phone line running into a modem connected to his computer. When all of those facts are

18

added up, we have no problem concluding the officers had reasonable suspicion to suspect Yuknavich's use of his computer violated his probation.

## IV.  CONCLUSION

Despite the absence of a state regulation or search condition requiring Yuknavich to submit to warrantless searches, he had a greatly reduced expectation of privacy in his computer.  Under the *Knights* balancing test, the probation officers needed no more than reasonable suspicion of a probation violation to conduct a search of his computer.  Because the search was supported by reasonable suspicion, Yuknavich's motion to suppress was properly denied.

**AFFIRMED.**