[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14081
Non-Argument Calendar

_____

D. C. Docket No. 04-00116-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS PAUL GODSEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(March 19, 2007)**

Before TJOFLAT, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

I.

Nicolas Paul Godsey, who was convicted of possession with intent to

distribute methamphetamine and using and carrying a firearm in furtherance of a drug trafficking offense, appeals the district court's denial of his motion to suppress.

## II.

In October 2003, Officer Darryl Wilson of the Bayou La Batre police department participated in an investigation of Godsey, who was a state probationer at the time. As a result of the investigation, two arrest warrants were issued for Godsey, one for rape and another for furnishing a controlled substance to a minor. In early November 2003, Wilson contacted Deloris Bagsby, an employee of the Mobile County Community Corrections Center ("MCCCC") and Godsey's probation officer. Bagsby referred the matter to John Branscomb, a subordinate county probation officer who at times had visited Godsey as part of Godsey's probation. Wilson related to Branscomb that warrants had been issued for Godsey's arrest. Wilson then requested that Branscomb accompany him to Godsey's residence at the time the warrants were served for the purpose of conducting a search. Branscomb agreed.

On the morning of November 13, 2003, Wilson, Branscomb, and a Bayou La Batre police officer arrived at Godsey's trailer home. When Godsey opened the door, he was arrested. Wilson handcuffed Godsey and explained his rights.

According to Branscomb, Godsey stated that he wanted to cooperate. After a second individual in the trailer was arrested for possession of Ecstacy, Branscomb explained to Godsey that, as a probation officer, he had the right to search the residence. Godsey then shook his head in agreement, although he denies that he consented to the ensuing search. Branscomb proceeded to search the house, including using keys found in the house to open a locked room and a safe. During his search of the residence, Branscomb located drugs and weapons. As a result, Godsey was indicted for possession with intent to distribute 46 grams of methamphetamine, in violation of 21 U.S.C. § 841, and using and carrying a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

Godsey moved to suppress the evidence seized from his home, asserting that the probation officer lacked a warrant or probable cause for the search. Godsey also denied that he had consented to the search. The district court denied the motion to suppress, finding that the county probation officer had operated under state regulations authorizing searches of probationers' residences upon reasonable grounds, and that the arrest warrants here established reasonable suspicion to conduct the search. The district court found that, to the extent a diminished privacy interest was relevant to its analysis, the very fact that Godsey was on

3

probation demonstrated its existence. The district court also found that Godsey waived any argument that a state probationer was different from a county probationer because he cited no authority to support this claim. Finally, the district court found that, even if there was no county regulation, the motion failed because other courts had found that such searches were constitutional as long as supported by reasonable suspicion, and there was no requirement that the probationer be on notice.

Godsey moved for reconsideration, asserting that the information supporting the arrest warrants was stale, therefore, the probation officer did not have reasonable suspicion. The district court denied the motion. Godsey then pleaded guilty to both counts of the indictment pursuant to a written plea agreement in which he retained the right to challenge the denial of his motion to suppress. Godsey was sentenced to 96 months on the drug count and a consecutive mandatory 60 months on the firearm count, for a total of 156 months imprisonment.

III.

We review a district court's denial of a motion to suppress de novo, reviewing all evidence in the light most favorable to the party that prevailed in the district court. United States v. Yuknavich, 419 F.3d 1302, 1308 (11th Cir. 2005);

United States v. Gonzalez, 71 F.3d 819, 824 (11th Cir. 1996).

IV.

"It is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions."  Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 3169, 97 L. Ed. 2d 709 (1987) (citation and internal quotations omitted).  In Griffin, a Wisconsin regulation permitted a probation officer to conduct a warrantless search of a probationer's home if there were "reasonable grounds" to believe the probationer was in violation of his probation.  Id. at 870-71.  The Supreme Court upheld the search, concluding that the regulation was justified by the "special needs" of a state's probation system. Id. at 876.

In this case, Godsey argues that the search was improper in the absence of a regulation such as that described in Griffin.  Alabama does, however, have a regulation similar to that in Griffin, although it is part of the state probation system.  Godsey alleges that because the probation officer who conducted the search of his home was a county probation officer, the state regulation did not apply and did not grant him the authority to conduct the search.  The county program responsible for overseeing Godsey's probation was created by the court

5

system as an alternative program for youthful offenders and was modeled after the state system. Furthermore, though the MCCCC was not formally connected to the state system, the MCCCC did not have its own independent regulations and Branscomb testified that he assumed the authority to search probationers' homes, as described in the state regulations, extended to county probation officers. Therefore, the distinction advanced by Godsey is a distinction without a difference, and we conclude that the state regulations did give Branscomb authority to search the probationer's home if the search was properly supported by reasonable suspicion. Griffin, 483 U.S. at 876.

Reasonable suspicion consists of "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." Yuknavich, 419 F.3d at 1311.

> When making a determination of reasonable suspicion, [this court] must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. It is clear that an inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required.

Id. (citing United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003)). The officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. (citing United States v. Boyce, 351 F.3d 1102, 1107 (11th Cir. 2003)).

6

In this case, police notified the MCCCC that arrest warrants for rape and a controlled substance offense had been issued for Godsey. This information was sufficient to give reasonable suspicion that Godsey had violated the terms of his supervised release. As reasonable suspicion may arise from the officers' collective knowledge, it is of no matter that Branscomb received the information second hand. United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004). Thus, in light of the arrest warrants and the information from police and Branscomb's supervisor, we conclude that Branscomb had reasonable suspicion to support the search, and the district court properly denied the motion to suppress.

Accordingly, we **AFFIRM.**