[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12173

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DUEL WAYNE POPE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cr-00052-AKK-JHE-1

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Duel Pope, Jr. appeals the denial of his motion to suppress evidence found when Alabama Bureau of Pardons and Paroles probation officers entered his home to address his violation of a probation condition and subsequently found a shotgun inside an open closet. The district court denied Pope's motion to suppress, finding that the search was reasonable under the Fourth Amendment, and that the gun was in plain view. For the following reasons, we affirm the district court.

## I.

At the time of the relevant events, Pope was on probation for two separate felony convictions in Alabama. Pope's orders of probation included several conditions with which he agreed to comply, including the following relevant conditions:

> 4. Report to the Probation Officer as directed.
> 5. Permit the Probation Officer to visit defendant at home or elsewhere.
> . . .
> 11. Submit to searches by the Probation Officer of his person, residence, vehicle, or any property under his/her control.
> . . .

> 13. Do not possess, receive, or transport firearms.

Pope was to report monthly to Officer Lucretia Battles at her office. Pope was later reassigned to Officer Kenneth Thornton. Both Officer Battles and Officer Thornton were assigned to St. Clair County, Alabama. Pope was compliant with his reporting for several months, but he failed to report to Officer Thornton in July and August 2019. Pope had called Officer Thornton advising that he was having car troubles one month, but Officer Thornton heard nothing further after that phone call.

On August 28, 2019, Officer Battles and Officer Thornton visited Pope's home in Jefferson County—just over the St. Clair County line—to address the violation of Pope's probation orders. When they arrived, Pope's wife informed the officers that he was not home. However, Pope's young daughter stated that Pope was inside. The officers also observed two males inside the garage. Given the conflicting accounts of Pope's whereabouts and the officers' belief that one of the men in the garage could be Pope, they decided to enter the home. The officers attempted to enter through the front door but found it had been deadbolted from the inside—despite observing Pope's wife exit through the front door when they initially pulled up—so they entered through the garage.

The officers located Pope lying face down on a bed in an upstairs room. Pope was unresponsive, but the officers eventually woke him up. At the evidentiary hearing on the motion to

suppress in the district court, the officers testified that Pope's speech was slurred, and he appeared to be under the influence of something. They handcuffed Pope and searched his room for contraband or paraphernalia, examining objects on a desk and opening drawers and boxes. After several minutes, Officer Thornton shone his flashlight into an open closet, which revealed a "16-guage pump-action shotgun." The officers seized the gun, took Pope outside, read him his *Miranda*[1] rights, and transported him to the St. Clair County Jail.

Pope filed a motion to suppress the evidence found as a result of the search and challenging his arrest, arguing that the search and arrest violated the Fourth Amendment and Alabama state law. The magistrate judge held an evidentiary hearing on the motion and heard testimony from Officer Battles and Officer Thornton. The magistrate judge recommended denying Pope's motion to suppress, and the district judge adopted the report and recommendation. Pope pled guilty to being a felon in possession of a firearm but reserved the right to appeal the denial of his suppression motion.

## II.

Denial of a motion to suppress presents mixed questions of fact and law. *United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015). We review the district court's factual findings for clear error,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

and legal conclusions *de novo*. *Id.* We may affirm the denial of a motion to suppress on any ground that the record supports. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). We construe the facts "in the light most favorable to the prevailing party below," affording substantial deference to the factfinder's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (internal quotation marks omitted). We will not reverse a factual finding concerning credibility unless the finding is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Cavallo*, 790 F.3d 1202, 1227 (11th Cir. 2015) (internal quotation marks omitted).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness is "[t]he touchstone of the Fourth Amendment." *United States v. Knights*, 534 U.S. 112, 118 (2001). Without a warrant issued upon probable cause, a search is unreasonable—unless it falls into a specifically established exception. *Katz v. United States*, 389 U.S. 347, 357 (1967).

The Supreme Court has recognized an exception to the warrant and probable cause requirements for a probationer who has agreed to submit to searches as a condition of his probation. *United States v. Knights*, 534 U.S. 112, 121–22 (2001). "[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on

the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 118–19 (internal quotation marks omitted). An individual's "status as a probationer subject to a search condition informs both sides of that balance." *Id.* at 119. Probationers have a diminished expectation of privacy because they "do not enjoy the absolute liberty to which every citizen is entitled." *Id.* at 119 (internal quotation marks omitted). The government has an interest in probationers successfully completing probation and in apprehending those who violate the criminal law. *Id.* at 120–21. Balancing these interests, the Supreme Court held that "no more than reasonable suspicion" is required for law enforcement to search a probationer's home without a warrant when a probation condition authorizes such searches. *Id.* at 121.

## III.

On appeal, Pope makes one overarching argument: that the district court committed reversible error by denying his motion to suppress because the probation officers' entry, search, and arrest violated the Fourth Amendment and Alabama state law. Pope raises five distinct sub-arguments challenging the district court's findings that (1) the officers needed reasonable suspicion of only a probation violation—not of criminal activity—to enter and search his home; (2) the officers had jurisdiction to search his home outside of their assigned county; (3) the shotgun found in his home was in plain view; (4) the orders of probation and their conditions were valid; and (5) the officers did not need a written statement explaining Pope's violation of his probation conditions.

First, regarding the requisite standard for the search, the officers needed only reasonable suspicion of a probation violation to conduct a warrantless search of Pope's home given his probationer status and the search condition in his probation orders. *Knights*, 534 U.S. at 121–22. We have held that "[r]easonable suspicion consists of a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (internal quotation marks omitted). To determine whether a probation officer has reasonable suspicion to search a probationer's property, we "must take stock of everything [the officer] knew before searching." *Id.*

Here, prior to entering the home, Officers Battles and Thornton knew that Pope had been noncompliant with his monthly reporting, they received conflicting accounts as to whether Pope was inside, and they observed two men in the garage. These facts were sufficient to establish reasonable suspicion that Pope was evading his probation officers. A probation officer needs "no more than reasonable suspicion" of a probation violation to conduct a search. *Yuknavich*, 419 F.3d at 1309, 1311. Moreover, Pope was subject to a search condition. Given the reasonable suspicion of Pope's probation violation, and the fact that Pope's probation orders included a search condition, it was reasonable for the officers to enter and search Pope's residence. Once the officers located Pope and observed his unresponsiveness and slurred speech, they formed reasonable suspicion that he was under the influence

of drugs—which would be another violation of his probation orders. At that point in time, it was reasonable for the officers to search Pope's room for contraband. Applying the *Knights* balancing test, Pope's privacy interest was diminished given his probationary status, and the officers had an interest in apprehending Pope for violating his probation orders. Accordingly, the trial court was correct in concluding that the officers' search was reasonable under the Fourth Amendment.

Second, Pope's argument that the probation officers acted outside their geographical jurisdiction would not affect the reasonableness of the search under the Fourth Amendment. Generally, federal law governs the admissibility of evidence obtained by state officers in federal court. *United States v. Malekzadeh*, 855 F.2d 1492, 1496 (11th Cir. 1988) (regarding admissibility in federal court of wiretapped conversations). Therefore, whether state law authorizes a given search is irrelevant for our Fourth Amendment analysis. *Virginia v. Moore*, 553 U.S. 164, 171 (2008); *see also Cooper v. California*, 386 U.S. 58, 61 (1967) (noting that the question presented was not whether the search at issue was authorized by state law, but whether it was reasonable under the Fourth Amendment). As such, this argument lacks merit.

Third, Pope's argument that the search which revealed the gun was unreasonable is also meritless. As previously discussed, the officers' entry and search was reasonable under the Fourth Amendment. Moreover, under the "plain view doctrine," an officer may conduct a warrantless seizure when "(1) an officer is

21-12173                Opinion of the Court                    9

lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Here, the officers were lawfully located in Pope's residence pursuant to the conditions of his probation orders, and the officers testified at the evidentiary hearing that the shotgun was in plain view in the open closet. The incriminating character of the shotgun was immediately apparent, given that Pope was not permitted to possess firearms as a condition of his probation. The district court implicitly credited the probation officers' testimony that the gun was in plain view, and that determination is afforded substantial deference. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). Pope even admitted in the statement of facts accompanying his guilty plea that the gun was in plain view. Thus, we find no basis for reversing the district court's finding that the gun was in plain view.

Fourth, Pope challenges the validity of the probation orders and their conditions because the two orders were signed by judges a few days after they were presented to and signed by Pope. Under Alabama law, "[a]ll conditions of probation must be incorporated into a court's written order of probation, and a copy thereof must be given to the probationer." Ala. R. Crim. P. 27.1. The orders as signed by the St. Clair County judges were identical to the versions that Pope had reviewed and signed a few days earlier. The probation orders were signed in April 2018, at which time they became

court-imposed orders, and Pope complied with the conditions for several months.  The orders were still in effect in August 2019 at the time of the relevant events.  Pope has not provided any authority to support his argument that the timing of the judges' signatures after Pope's review and signing of the orders, rather than before, renders them invalid.

Fifth, Pope argues that under Section 15-22-54(d), Ala. Code 1975, the officers needed a written statement of his probation violation.  However, a written statement is necessary under Section 15-22-54(d) "only where the supervising probation officer does not personally make the arrest." *Estes v. State*, 690 So. 2d 512, 514 (Ala. Crim. App. 1996).  Officer Thornton, Pope's supervising probation officer, personally made the arrest.  Therefore, a written statement of Pope's probation violation was not needed.

The district court correctly concluded that the probation officers needed only reasonable suspicion of a probation violation to enter and search Pope's home.  Further, the district court did not clearly err in implicitly crediting the probation officer's testimony that the gun was in plain view.  Accordingly, we affirm.

**AFFIRMED.**