[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14460

_____

D.C. Docket No. 08-00031-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY TORELL CARTER,
a.k.a. Anthony T. Carter,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 27, 2009)

Before CARNES, HULL and COX, Circuit Judges.

PER CURIAM:

We consider in this appeal whether the warrantless search of the home of the

Defendant, a probationer, was reasonable under the Fourth Amendment. We apply

the balancing test articulated in *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587

(2001), and conclude that the search in this case was reasonable if supported by reasonable suspicion. And, because there was reasonable suspicion that the Defendant was engaged in criminal conduct, we conclude that the search was reasonable and affirm the district court's denial of the Defendant's motion to suppress.

## I. BACKGROUND

In December of 2003, Anthony Torell Carter was sentenced to three years probation for felony battery. (R.42 at 34.) Carter was then arrested for possession of cocaine. His original probation was revoked, and he was resentenced to four years probation in March of 2004. (*Id.*) Steve Pelfrey was Carter's probation officer.

In April of 2006, Carter was arrested by Florida authorities for trafficking in over 10 grams of ecstacy and possession of cocaine. (R.42 at 6.) After Carter successfully suppressed evidence, the assistant state attorney *nolle prosequied* the case. (*Id.* at 6-7; R.22 at 6.) But, the assistant state attorney did call Pelfrey to tell him about the arrest and the successful motion to suppress and to inform him that her office suspected that Carter was dealing drugs.

Between 2004 and December of 2007, Carter held jobs performing menial labor. (R.42 at 7-8.) During the year Pelfrey was his probation officer, Carter reported only three months of income, $800 for two months and $1200 for one month.

(*Id.* at 12-13.) Yet, in June of 2007, Carter moved out of his parents' home and into a two-bedroom townhome of his own. (*Id.* at 8.) Additionally, Carter acquired three cars between March 2006 and September 2007: a Cadillac, an Infiniti, and a Chevrolet Camaro.

In December of 2007, Carter told Pelfrey he was starting a drywall business called Kings of Drywall with a man named Chris Black. (R.42 at 13.) Pelfrey learned that Black not only had felony battery and possession of cocaine convictions, but that he also was with Carter when Carter was arrested in April 2006 for trafficking ecstasy and possession of cocaine. (*Id.* at 16.)

On January 7, 2008, Carter gave Pelfrey the business card of Kings of Drywall, which featured a highly stylized crown logo similar to that used by gangs. (R.42 at 14.) Pelfrey had been trained by the Department of Juvenile Justice in criminal gang symbols, had seen many gang symbols in the juvenile system, and had literature published by the state about criminal gangs in Florida.

Pelfrey believed that Carter's lifestyle, evidenced by his recent move to his own townhome and acquisition of three cars, could not be supported by the unskilled labor he performed and the meager earnings he reported. When Pelfrey learned that Carter had just formed a business with Black, who was present when Carter was most recently arrested for drug offenses, and that their business card featured a gang

symbol, he decided to plan a warrantless search of Carter's townhome. (R.42 at 16-17.)

When Pelfrey, other probation officers, and two members of the Okaloosa County Multi-agency Drug Task Force searched Carter's townhome, they found evidence that led to the prosecution of Carter for possession with intent to distribute crack cocaine and possession of a firearm by a felon.[1]

Carter moved to suppress the evidence obtained during the search, arguing that the search was not supported by probable cause. The district court denied the motion. Carter then pled guilty to the two charges but reserved the right to appeal the denial of his motion to suppress.

Carter now challenges on appeal the denial of his motion to suppress.

## II. CONTENTIONS OF THE PARTIES AND ISSUES ON APPEAL

Carter argues that the district court erred in concluding that the search of his townhome was constitutionally permissible if it was based on reasonable suspicion but not probable cause. Furthermore, Carter argues, even if a search of a probationer's home is permissible on the basis of reasonable suspicion, Pelfrey did not have reasonable suspicion in this case that any crime was occurring.

---

[1]We cannot determine from the record whether Carter was present when Pelfrey and the other officers searched his home. Whether he was present or not would not change our analysis.

The Government responds that both Supreme Court and Eleventh Circuit precedent hold that reasonable suspicion is sufficient to support the search of a probationer's residence. Additionally, the Government argues that there was ample evidence to create a reasonable suspicion that Carter was engaging in criminal conduct.

We therefore consider in this appeal whether the search of Carter's home was reasonable under the Fourth Amendment if it was supported by reasonable suspicion but not probable cause. We then consider whether reasonable suspicion existed in this case.

## III. STANDARD OF REVIEW

We review de novo the district court's denial of a motion to suppress. *United States v. Yuknavich*, 419 F.3d 1302, 1308 (11th Cir. 2005). We view "all evidence in the light most favorable to the party that prevailed in the district court." *Id.* (citation omitted).

## IV. DISCUSSION

Carter argues that the district court erred in concluding that reasonable suspicion, and not probable cause, was a constitutionally sufficient basis for searching his home. Specifically, Carter argues that a probationer is not subject to searches based on reasonable suspicion alone merely as a consequence of being a

probationer.[2]  Rather, there must be some condition of probation that reduces a probationer's expectation of privacy in the object of the search in order for a search to be permissible based on reasonable suspicion alone.  While we agree with Carter that none of our binding precedent holds that a probationer is subject to reasonable suspicion searches solely because he is a probationer, we apply the balancing test set forth in *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587 (2001), and conclude that the search in this case need only be supported by reasonable suspicion to be reasonable under the Fourth Amendment.

In *Knights*, the Supreme Court held that the warrantless search of a probationer's house was permissible even though it was supported by only a reasonable suspicion that criminal conduct was occurring, and not probable cause. 534 U.S. 112, 121-22, 122 S. Ct. 587, 592-93 (2001).  The Court stated that "the reasonableness of a search is determined 'by assessing, on the one hand, the degree

_____

[2]On the eve of oral argument, Carter submitted *Jones v. State*, 653 S.E.2d 456 (Ga. 2007) as supplemental authority.  In *Jones*, the Georgia Supreme Court found that a warrantless search of the probationer's home was unreasonable.  *Jones*, however, is distinguishable.  In *Jones*, the defendant initially was on intensive supervised probation with a condition that Jones agree to warrantless searches.  But that intensive supervised probation ended.  Jones was on regular probation, and the court did not check the box authorizing warrantless searches.  Thus, the Georgia Supreme Court stressed that the probation orders "not only failed to place Jones on notice that he had a diminished expectation of Fourth Amendment privacy at the time of the search in question, those orders affirmatively suggested precisely the *opposite*." *Id.* at 458-59.

In any event, we focus on precedent that binds us -- decisions of the Supreme Court and this court.

to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 118-19, 122 S. Ct. at 591 (*quoting Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300 (1999)).

The *Knights* Court then considered Knights's individual privacy interests. The Court noted that, as a probationer, Knights did not enjoy the same amount of liberty that other citizens do. 534 U.S. at 119, 122 S. Ct. at 591. The Court also noted that Knights's probation had a search condition requiring him to submit his residence to warrantless searches. *Id.* at 119-20, 122 S. Ct. at 591-92.

The Court then considered the governmental interests at stake. It first noted that probationers are more likely to commit crimes than other citizens, and the government therefore has an interest in keeping close watch over them. *Knights*, 534 U.S. at 120, 122 S. Ct. at 592. Furthermore, probationers have a greater incentive to conceal the evidence of their crimes because they are subject to greater scrutiny than the average citizen. *Id.*

The *Knights* Court then concluded that the search of Knights's home based on reasonable suspicion was permissible because Knights had a reduced privacy interest and the government had a strong interest in combating crime by probationers. 534 U.S. at 121, 122 S. Ct. at 592-93.

7

The Government argues that, in *United States v. Yuknavich*, 419 F.3d 1302 (11th Cir. 2005), the Eleventh Circuit extended *Knights* to permit reasonable suspicion searches of all probationers, even absent any condition of probation requiring a probationer to submit to warrantless searches. But in *Yuknavich*, the defendant's use of a computer was limited by conditions of his probation. *Id*. at 1310. We reasoned that the conditions on the defendant's computer use reduced his expectation of privacy in his computer, and thus the search of the computer was permissible based only on reasonable suspicion. *Id.* at 1310-11.

Applying the balancing test articulated in *Knights*, we conclude that reasonable suspicion is the correct standard for analyzing the reasonableness of the search at issue in this case.

First, we examine Carter's privacy interests. Carter was a probationer, and as such, did "not enjoy the absolute liberty to which every citizen is entitled." *Yuknavich*, 419 F.3d at 1309 (*quoting Knights*, 534 U.S. at 119, 122 S. Ct. at 591). Additionally, a condition on Carter's probation required him to answer all inquiries made by his probation officer, and submit to visits by the probation officer at his home, workplace, or elsewhere. (Appellant's Br., App. 3 at 1.)

Second, we examine the countervailing government interests. The government's interest in preventing Carter from committing further crimes was high

8

in this case. Unlike the defendants in *Yuknavich* and *Knights*,[3] Carter was on probation for *both* a violent felony and a drug-related felony. As the *Knights* Court noted, the government's interest in monitoring a probationer stems from a probationer's propensity to commit more crimes, as well as a probationer's motivation to hide the evidence of his crimes. In this case, where the probationer has a history of drug and violence-related felonies, the government's interest in monitoring the probationer is particularly high. *See, e.g.,* U.S.S.G. § 4B1.1(a) (providing enhanced penalties for criminals with history of drug felonies or crime of violence felonies).

Although Carter's expectation of privacy is higher in this case than that of the defendants in *Yuknavich* and *Knights* because he did not have a condition of probation that required him to submit to warrantless searches of his home or regulate his use of a computer that was searched, Carter's expectation of privacy was nevertheless reduced by the condition of probation requiring him to submit to home visits by his probation officer. Balanced against Carter's reduced expectation of privacy is the government's high interest in preventing drug and violence-related crimes. When a probationer has a condition of probation reducing his expectation of

---

[3]The defendant in *Yuknavich* was on probation for downloading and printing child pornography. 419 F.3d at 1304. The defendant in *Knights* was on probation for a drug offense. 534 U.S. at 114, 122 S. Ct. at 589.

privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history, a search can be permissible when supported only by reasonable suspicion. We conclude that, in this case, Carter had a reduced expectation of privacy in his home and the government had a sufficiently high interest in monitoring him on account of his drug and violence-related crimes that a search of Carter's home based upon reasonable suspicion was reasonable under the Fourth Amendment. Accordingly, the search of Carter's home was permissible.

Carter argues that Pelfrey did not have reasonable suspicion that he was engaged in any criminal conduct because any evidence of criminal conduct was stale. Additionally, Carter argues, that what little current information Pelfrey had that suggested Carter was engaged in criminal activity was insufficient to create a reasonable suspicion.

But, when considering the staleness of information, we must consider whether the crime is ongoing or isolated. *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000); *see United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir. 1983) (no staleness where information indicates continuous conduct). We conclude that there is no staleness problem here. While it is true that Carter's arrest for possession with intent to distribute ecstacy and possession of cocaine was 20 months prior to the search, there was evidence giving rise to a reasonable suspicion that

Carter was engaging in criminal conduct up until January 7, 2008, just two weeks before the search. During the period of time between his ecstasy and cocaine arrest and the search of his townhome which uncovered illicit firearms and drugs, Carter appeared to live well beyond his means. He reported only $2,800 in earnings to his probation officer for the entire year of 2007, yet during that year he moved out of his parents' house and into his own townhome, and although he had already owned a Cadillac (purchased a few months before his arrest for possession with intent to distribute ecstasy in 2007), he purchased both a Camaro and an Infinity FX45. Then, in December of 2007, just one month before the search, Carter started a new business with Chris Black, who had committed drug offenses and was present with Carter at his April 2007 arrest. Finally, just a few weeks before the search, Carter showed Pelfrey the business card for his business with Black, and it featured what Pelfrey concluded was a gang symbol. This pattern of conduct is sufficient to create a reasonable suspicion that Carter was engaged in ongoing criminal conduct. Accordingly, we conclude that there was reasonable suspicion to search Carter's townhome.

## V. CONCLUSION

The district court used the correct standard to determine if the search was permissible under the Fourth Amendment. In this case, under the *Knights* balancing

test, the search was permissible if it was supported by reasonable suspicion. The district court also correctly weighed the evidence and concluded that there was reasonable suspicion to support the search. We affirm the district court's denial of Carter's motion to suppress.

AFFIRMED.