[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 14, 2012
JOHN LEY
CLERK

No. 10-14261

_____

D.C. Docket No. 3:08-cr-00005-JTC-LTW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROGER CARRUTHERS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 14, 2012)

Before CARNES, PRYOR, and RIPPLE,[*] Circuit Judges.

PER CURIAM:

Roger Carruthers appeals his convictions for knowingly receiving and distributing child pornography. 18 U.S.C. § 2252A(a)(2)(A). Carruthers contends that his prosecution violated the Speedy Trial Act, his Sixth Amendment rights to a speedy trial and the assistance of counsel, his right to due process, and Federal Rule of Criminal Procedure 5. Carruthers also argues that the government exercised its peremptory challenges based on gender discrimination. Because all of Carruthers's arguments fail, we affirm.

## I. BACKGROUND

To explain the context of this appeal, we address three matters. We first discuss the conduct that led to Carruthers's first indictment. We then discuss the first indictment and the delays that led the trial court to dismiss the indictment for a violation of the Speedy Trial Act. 18 U.S.C. §§ 3161, 3162. Finally, we discuss Carruthers's second indictment and his trial.

*A. Facts Leading to Carruthers's Indictment for Possessing and Distributing Child Pornography.*

In 2005, FBI Special Agent Steven Forrest was investigating the

---

[*]Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

distribution of child pornography on the internet. While in an online chat room, Forrest communicated with someone using the screen name "LIL1FORFAM". On November 17, 2005; February 13, 2006; March 28, 2006; and May 16, 2006, Forrest had online conversations with a person using the screen name "LIL1FORFAM" during which the person using that screen name e-mailed Forrest videos and still images of child pornography.

Forrest obtained information from America Online that the screen name and user account transmitting the child pornography were held by Roger Carruthers of 314 Laurel Lane, LaGrange, Georgia. Based on this information, FBI agents obtained a search warrant for Carruthers's home and executed that warrant on July 28, 2006. During the search, the agents interviewed Carruthers in his home. Agent Joanna Southerland testified that Agent Mike Yoder read Carruthers his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). Carruthers's girlfriend testified that during his interview with the agents, she heard Carruthers ask, "Do I need an attorney?" and heard Yoder reply that Carruthers did not need an attorney. Both agents testified that Carruthers never asked for or mentioned an attorney.

During the interview, Carruthers initially denied that he possessed or distributed child pornography. Carruthers later retracted this statement and told

3

the agents that he used the screen name "LIL1FORFAM" and that he had traded

child pornography with individuals he met in chat rooms.  After the interview, the

agents left the premises with computer evidence they had seized but did not arrest

Carruthers.  The FBI determined that the computer contained over 4,000 images of

child pornography and over 100 videos of child pornography.

## B. Carruthers's First Indictment

On August 9, 2006, Carruthers was arrested for knowingly receiving and

distributing child pornography.  18 U.S.C. § 2252.  Carruthers was indicted for

this offense on September 6, 2006, and was arraigned on September 25, 2006.  On

October 10, 2006, Carruthers filed pre-trial motions to suppress the evidence

seized at his house and his statements to FBI agents.  The magistrate judge held a

hearing on the motions, issued a report and recommendation that the suppression

motions be denied, and certified the case ready for trial on May 3, 2007.  On May

14, 2007, Carruthers filed objections to the magistrate judge's report and

recommendation, and those matters were submitted to the district court on May 24,

2007.  In early September, the district court set the case for trial on September 24,

2007.  The government filed an unopposed motion to continue the trial, which the

district court granted without setting a new trial date.

On February 21, 2008, Carruthers moved to dismiss the indictment based on

4

pretrial delay in violation of the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162. On April 15, 2008, the district court granted Carruthers's motion to dismiss the indictment for violations of the Speedy Trial Act and dismissed the indictment without prejudice. The court found that both the government and Carruthers were partly responsible for the pretrial delay because they had filed pretrial motions. The court also found that the court, not the parties, was responsible for the lengthy delay that occurred between the date when the case was certified ready for trial and the date of the dismissal. In total, 312 non-excludable days, including the 70 days allowed by statute, passed between the indictment and dismissal without prejudice.

*C. Carruthers's Second Indictment and Trial*

Carruthers was released from custody on April 16, 2008, and was arrested again on April 17, 2008, based on a criminal complaint charging him with distributing and receiving child pornography. Carruthers was brought before a magistrate judge for his initial appearance on April 22, 2008. Between his arrest and presentment, no interrogation occurred, no statements were taken from Carruthers, and no evidence was gathered. On May 13, 2008, Carruthers was again indicted for distributing and receiving child pornography. Prior to trial, Carruthers filed a motion seeking to dismiss the indictment for a violation of

5

Federal Rule of Criminal Procedure 5(a). He argued that the six-day delay between his arrest and presentment before a magistrate judge required the court to dismiss his case. On October 8, 2008, the magistrate judge recommended the denial of Carruthers's motion to dismiss, and the district court adopted the report and recommendation.

On October 9, 2008, the district court set the case for trial on November 3, 2008. Following a continuance and resetting of the trial date, Carruthers moved to incorporate by reference his motion to suppress from the earlier proceeding. The district court granted the motion and overruled Carruthers's objections to the magistrate judge's report and recommendation, which had the effect of denying Carruthers's motion to suppress his statements during his interview with FBI agents on July 28, 2006.

### 1. Jury Selection

The court and the parties questioned 37 members of the venire during voir dire. A jury was selected from the first 31 potential jurors. Of these 31, 19 or 61 percent, were male. Of the 12 jurors selected, 5 or 42 percent, were male.

Carruthers objected to the prosecutor's peremptory challenges of four "white men," identified as numbers 8, 9, 22, and 28. Without determining whether Carruthers had established a prima facie case of discrimination, the district court

asked the prosecutor to provide the basis for the challenge of each of the four men. The prosecutor asserted that she struck potential juror number 8 because he had a prior conviction for driving under the influence of alcohol, no children, was unemployed, and did not appear to be a "stake-holder" in the community; potential juror number 9 because he was unemployed, had no children, and appeared to have either a mental handicap or difficulty understanding the proceedings; potential juror number 22 because he had no children and had a "technical engineering degree as a background," which made the prosecutor concerned he might "expect perfect evidence"; and potential juror number 28 because he was an engineer and stated that he considered himself a computer expert.

In response, Carruthers's attorney argued that the prosecutor's reasons were pretextual. Defense counsel stated that "female juror no. 6 also has no children, and I think some of the same reasons the Government has given for striking jurors that they struck also would apply to some of the jurors that have not been struck." Carruthers offered no other response. The district court found that the government had articulated "valid nondiscriminatory reasons for exercising . . . the peremptory strike of those particular jurors" and denied Carruthers's challenge to the jury.

### 2. Cross-examination

At trial, Carruthers testified and denied that he had distributed or received

child pornography. He testified that, when initially confronted by agents at his home and asked whether he had distributed or received child pornography, he "didn't know it was serious." He stated that he lied to the agents and confessed to trading child pornography to protect his live-in girlfriend, Renee Matula, whom Carruthers stated may have been responsible for the child pornography trading.

On cross-examination, the prosecutor attempted to show that Carruthers had waited a long time before he changed his story to assert that he falsely confessed to protect his girlfriend:

> Q. Mr. Carruthers, once you got arrested and knew it was serious, did you make any attempts to contact law enforcement or me and let us know that it was Renee who had in fact committed this crime and not you?
> A. I didn't know that for sure it was Renee. No, I didn't let anybody know.
> Q. You've been in jail for quite some time; correct?
> A. Correct.
> Q. And in all that time –

Carruthers's attorney objected to the question about Carruthers's time in jail and moved for a mistrial. The prosecutor rephrased her question, and Carruthers confirmed that, other than talking to his attorney, he never let anyone know that someone else had put child pornography on his computer before he testified at trial. The court later denied Carruthers's motion for a mistrial.

## II. STANDARD OF REVIEW

8

We review the dismissal of an indictment without prejudice for a violation of the Speedy Trial Act for abuse of discretion. United States v. Knight, 562 F.3d 1314, 1321 (11th Cir. 2009). The determination of whether a defendant's constitutional right to a speedy trial has been violated is a mixed question of law and fact. We review determinations of law de novo and findings of fact under the clearly erroneous standard. United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996). We review the denial of a motion to dismiss an indictment on non-constitutional grounds for abuse of discretion. United States v. Pielago, 135 F.3d 703, 707 (11th Cir. 1998). "We will not reverse a district court's refusal to grant a mistrial unless an abuse of discretion has occurred." United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994). We review findings about discrimination in the exercise of peremptory challenges for clear error. Cent. Ala. Fair Hous. Ctr. v. Lowder Realty, 236 F.3d 629, 635 (11th Cir. 2000). We review a denial of a motion to suppress de novo. We view the evidence in the light most favorable to the party that prevailed in the district court. United States v. Carter, 566 F.3d 970, 973 (11th Cir. 2009).

### III. DISCUSSION

Carruthers raises six arguments on appeal. First, he argues that the district court abused its discretion when it declined to dismiss his indictment with

9

prejudice after a violation of the Speedy Trial Act. Second, he argues that the district court erred when it held that his Sixth Amendment right to a speedy trial had not been violated. Third, he contends that the district court erred when it declined to dismiss his indictment after the government waited six days to bring him before a magistrate judge. Fourth, Carruthers argues that a statement the prosecutor made during her cross-examination of Carruthers deprived him of due process. Fifth, he contends that the prosecutor exercised peremptory challenges based on gender. Finally, Carruthers argues that the district court erred when it denied his motion to suppress his statements to FBI agents. We address each argument in turn.

*A. The District Court Did Not Abuse Its Discretion When It Dismissed Carruthers's First Indictment Without Prejudice for a Violation of the Speedy Trial Act.*

A district court has the discretion to dismiss an indictment with or without prejudice under the Speedy Trial Act. 18 U.S.C. § 3162(a)(2). The court must consider three factors when determining the method of relief: (1) "the seriousness of the offense"; (2) "the facts and circumstances of the case which led to the dismissal"; and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." Id. "[T]he proper dismissal sanction to be imposed in each case is a matter left to the exercise of the sound discretion of

10

the trial judge after consideration of the factors enumerated in the statute," Knight, 562 F.3d at 1322, and "the judgment of the district court 'should not lightly be disturbed' if the district court has considered all of the statutory factors and if the underlying factual findings are not clearly erroneous." Id. (quoting United States v. Taylor, 487 U.S. 326, 337, 108 S. Ct. 2413, 2420 (1988)). The district court dismissed Carruthers's first indictment without prejudice under the Speedy Trial Act, 18 U.S.C. § 3161(c), because more than 70 days had passed since he first appeared before the court.

The district court did not abuse its discretion when it weighed the three factors and dismissed Carruthers's indictment without prejudice. The court correctly determined that the statutory minimum sentence of 20 years of imprisonment reflects the seriousness of Carruthers's offense. See Knight, 562 F.3d at 1323. The district court did not clearly err when it found that neither party was responsible for the expiration of the trial clock. The court found that both parties were responsible for parts of the delay and that the court itself was at fault for a large part of the delay. The court also noted that Carruthers did not object to the government's motion to continue and waited months to file his motion to dismiss for a speedy trial violation. Finally, the district court did not clearly err when it found that Carruthers offered no evidence of any prejudice caused by the

11

delayed trial date.

*B. The District Court Did Not Err When It Denied Carruthers's Motion To Dismiss for a Violation of His Sixth Amendment Right to a Speedy Trial.*

To determine whether the government has violated the right to a speedy trial under the Sixth Amendment, a district court considers four factors: (1) "length of delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)). Unless the period of delay is "presumptively prejudicial" under the first factor, a district court need not consider the final three factors. A delay becomes "presumptively prejudicial" as it approaches one year. Knight, 562 F.3d at 1323. "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." Id. More than two years elapsed between Carruthers's first arrest and his trial.

The district court did not err when it weighed the four Barker factors and determined that the government did not violate Carruthers's Sixth Amendment right to a speedy trial. The first factor, the length of the delay, weighed in Carruthers's favor. At more than two years, the length of the delay was presumptively prejudicial. The second factor, the reason for the delay, did not weigh heavily against the government. The government had filed several motions

for extensions of time and a continuance of trial, but Carruthers does not contend that any of these motions were in bad faith so as to weigh heavily against the government. See United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997). Carruthers caused part of the delay when he appealed a detention order and filed motions for continuances and extensions of time. And the court was responsible for a large part of the delay because it waited to set a trial date then failed to reset a new trial date. The third factor, Carruthers's delay in asserting his right, weighed against Carruthers. "[A] defendant has some responsibility to assert a speedy trial claim," Barker, 407 U.S. at 529, 92 S. Ct. at 2191, and "[t]he failure to assert the constitutional right to speedy trial is weighed heavily against the defendant," United States v. Twitty, 107 F.3d 1482, 1490 (11th Cir. 1997). The statutory speedy trial clock expired on August 17, 2007, but Carruthers did not assert his right to a speedy trial until February 21, 2008. As to the final factor, Carruthers argued that his incarceration made it difficult for him to find witnesses and documents that would help with his defense, but he did not allege that the delay caused him any prejudice. He made only conclusory allegations that his incarceration caused him anxiety and concern. Carruthers's Sixth Amendment right to a speedy trial was not violated.

*C. The District Court Did Not Abuse Its Discretion When It Denied*

13

*Carruthers's Motion To Dismiss the Second Indictment for a Violation of Federal Rule of Criminal Procedure 5(a).*

Carruthers contends that a six-day delay between his arrest and presentment before a federal magistrate judge was "unnecessary" and that the district court abused its discretion when it denied his motion to dismiss his indictment. Federal Rule of Criminal Procedure 5 mandates that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. Pro. 5(a)(1)(A). After the district court dismissed Carruthers's initial indictment without prejudice, Carruthers was released and then rearrested on a criminal complaint on April 17, 2008. On April 23, 2008, Carruthers was brought before a federal magistrate judge. The purpose of Rule 5 "is to have a judicial officer advise the defendant of his constitutional rights and thereby to prevent administrative dete[n]tion without probable cause and to reduce the opportunity for third-degree practices." United States v. Mendoza, 473 F.2d 697, 702 (5th Cir. 1973).

The district court did not abuse its discretion when it denied Carruthers's motion to dismiss his indictment. During the six days between Carruthers's arrest and presentment no interrogation occurred, no statements were taken from Carruthers, and no evidence was gathered. The only remedy we have recognized

14

for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation. <u>Mendoza</u>, 473 F.2d at 702.

### D. The District Court Did Not Abuse Its Discretion When It Denied Carruthers's Motion for a Mistrial.

Carruthers argues that the district court should have granted his motion for a mistrial after the prosecutor asked him on cross-examination whether he had been in jail for some time, but this argument fails. "The decision of whether to grant a mistrial lies within the sound discretion of a trial judge as he or she is in the best position to evaluate the prejudicial effect of improper testimony," <u>Perez</u>, 30 F.3d at 1410, and "[w]e will not reverse a district court's refusal to grant a mistrial unless an abuse of discretion has occurred," <u>id.</u> We have made clear that "the mere utterance of the word jail, prison, or arrest does not, without regard to context or circumstances, constitute reversible error per se." <u>United States v. Villabona-Garnica</u>, 63 F.3d 1051, 1058 (11th Cir. 1995). In the light of the substantial evidence against Carruthers and the brief nature of the reference to Carruthers's time in jail, the district court did not abuse its discretion in denying Carruthers's motion for a mistrial.

### E. The District Court Did Not Clearly Err When It Found that the Prosecutor Exercised Peremptory Challenges in a Gender-Neutral Manner.

Carruthers argues that the district court clearly erred when it found that the

prosecutor exercised her peremptory challenges in a gender-neutral manner, but we disagree. A prosecutor cannot use peremptory challenges to remove a juror based on the juror's race or gender. Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986); J.E.B. v. Alabama, 511 U.S. 127, 129, 114 S. Ct. 1419, 1421 (1994). "[T]he ultimate burden of persuasion regarding racial [or gender] motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995). The prosecutor gave gender-neutral reasons for each of her four non-mutual peremptory challenges. The prosecutor stated that she challenged three of the four men, in part, because they had no children. Carruthers responded that one female juror also had no children and had not been challenged, but he offered nothing else to establish gender motivation. Based on the evidence before it, the district court did not clearly err when it found that Carruthers did not meet his burden of establishing gender motivation for the strikes.

*F. The District Court Did Not Err When It Denied Carruthers's Motion To Suppress His Statements to FBI Agents.*

Carruthers challenges the denial of his motion to suppress statements he made to Agent Yoder on the ground that he invoked his right to speak to an attorney when he asked "do I need an attorney?", but the magistrate judge found

that Carruthers did not ask this question.  Additionally, even if Carruthers had asked this question, he did not clearly invoke his right to an attorney.  See Davis v. United States, 512 U.S. 452, 462–63, 114 S. Ct. 2350, 2356 (1994).  The district court did not err when it denied Carruthers's motion to suppress.

## IV. CONCLUSION

We affirm Carruthers's convictions.

**AFFIRMED**.