[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-11817

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

*versus*

ARNOLD D. HOLLAND,
a.k.a. manboy12,

                                        Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:03-cr-00336-CAP-AJB-1

2                    Opinion of the Court                    22-11817

_____

_____

No. 22-11819

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ARNOLD D. HOLLAND,
a.k.a. Threezy3Three,
a.k.a. A.D.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00399-MLB-JKL-1

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Arnold Holland appeals his 468-month sentence and the revocation of his supervised release after pleading guilty to eight counts of producing child pornography. Holland challenges the District Court's denial of his motion to suppress evidence. He argues that his probation officer did not have reasonable suspicion to search his home because the information prompting the search was stale. Holland also claims that the District Court committed plain error by not finding a term of his supervised release unconstitutionally vague.

We hold that the District Court did not err. The totality of the circumstances and collective knowledge of the officers supported a reasonable suspicion to search Holland's home, and the information supporting their reasonable suspicion was not stale about a year later. Nor need we address Holland's vagueness claim because the exact definition of "sexually oriented material" as a violation of his compliance contract is irrelevant to whether reasonable suspicion existed. Accordingly, we affirm.

## I.

In 2004, Defendant Holland was sentenced to 151 months' imprisonment after pleading guilty to ten counts of receiving child pornography. He was released from custody in July 2014 and commenced a three-year term of supervised release. Before and during his supervised release, Holland resided at Dismas House, a halfway house. In February 2015, he was expelled from Dismas House for possessing a cell phone with photo capabilities, violating house rules.

About two years later, Holland's probation officer visited Holland at his residence. Inside, the officer discovered multiple unauthorized cell phones in Holland's possession. When asked if the phones contained pornography, Holland said that "there would be ages 16 and up." After confiscating and searching the phones, the officer initiated proceedings to revoke Holland's supervised release for breaching his compliance contract. The violations included possessing seven unauthorized cell phones with internet capabilities and two phones (of the seven) containing sexually oriented material or pornography.

Holland admitted to these violations. The District Court revoked his supervised release and sentenced him to one day in prison and two years of supervised release, six months to be served at Dismas House. All other general and special conditions of Holland's supervised release applied from the original judgment and commitment.

Holland entered a new sex offender compliance contract as part of his supervised release terms. He agreed not to possess, purchase, or subscribe to any sexually oriented material or pornography, including through mail, computer, telephone (900 numbers), video, or television; and not to visit any venues offering it. He had to obtain written approval from his probation officer before using any electronic bulletin board system, internet services, or computer networks, which included allowing routine inspections of his computer systems and media storage. Holland also agreed that any computer system he could access was subject to inspection and

permitted confiscation and disposal of any contraband found.  In short, Holland could not (1) possess any sexually oriented material, (2) use the internet without prior authorization, or (3) possess any internet-accessible cell phones.

In March 2018, Shannon Brewer, a Senior U.S. Probation Officer, assumed Holland's supervision.  In preparation, she reviewed Holland's prior case materials, such as his presentence investigation report, judgment and commitment documents, case-related records, notes from previous officers, and his compliance contract.  Officer Brewer learned that Holland had prior charges related to sexual offenses against minors, including a mistrial in 1996 and the dismissal of a 1999 case.  She also learned that federal agents recovered Holland's diary after the 1996 case's dismissal, revealing entries about his relationship with the victim and efforts to coerce the victim into recanting his accusations against Holland.  Officer Brewer's review also revealed Holland's 2004 federal conviction, 2015 expulsion from Dismas House, and 2017 revocation of his supervised release.  Further, she learned that, according to a psychosexual evaluation in 2014, Holland had a high risk of reoffending.

On March 31, 2018, the National Center for Missing and Exploited Children (NCMEC) received a cybertip[1] that, in December

---

[1] Special Agent Elizabeth Bigham clarified that cybertips are mandated by federal law, requiring internet service providers to report any form of child pornography, child sex trafficking, or online exploitation of a child to the NCMEC.  *See* 18 U.S.C. § 2258A.  This obligation extends to all platforms, like Google, Instagram, Snapchat, and other online services.  The information is reported to the NCMEC in the form of a cybertip.

2017 and January 2018, an individual under the username "yungcool1s" uploaded four images of prepubescent boys to Instagram. Instagram disclosed that the account's display name was "Yung In Atl" and provided the associated email address, branbarn90@gmail.com. NCMEC passed this tip along to the Georgia Bureau of Investigation (GBI), which assigned the case to Special Agent (SA) Bigham on April 26, 2018.

The information provided to the GBI included the IP address used to upload one of the images. SA Bigham, using public data, determined that T-Mobile owned the IP address, suggesting that the upload came from a mobile device. But when she subpoenaed T-Mobile, it no longer had information on that address. A subpoena to Google for information on the Gmail account, however, revealed that the account was linked to the phone number (404) 914-4767. Further investigation uncovered that Holland had listed this number on his Georgia driver's license.

Delving deeper into Holland's background, SA Bigham discovered his criminal history, including a previous conviction for child exploitation and sex offender registration. SA Bigham reached out to the NCMEC for information on the username "yungcool1s," revealing a December 2018 cybertip from Tumblr, a platform often exploited by offenders for the distribution and exchange of child pornography.[2] The tip documented many broken links alleged to have contained child pornography.

On January 3, 2019, SA Bigham notified Officer Brewer that the GBI had received intelligence about Holland. The exact details

---

[2] SA Bigham described Tumblr as a "website that you can blog on," "post pictures [and] videos," and "chat with people."

of the conversation were not fully recalled but SA Bigham shared the findings of her investigation: Holland was seemingly posting erotic images of ten- to twelve-year-old boys to Instagram. SA Bigham explained that the boys in the photographs were not fully unclothed but that outlines of their genitals were visible. She also confirmed that the phone number on Holland's driver's license was associated with the Instagram account. Neither Officer Brewer nor SA Bigham recalled whether SA Bigham shared the specific upload dates of the four images.

After speaking with SA Bigham, Officer Brewer worried that Holland was violating the terms of his release. She suspected that Holland might have had unauthorized cell phones in his possession and was using them to store sexually explicit material and access social media.

On January 14, 2019, Officer Brewer and other probation officers searched Holland's residence. They discovered four unauthorized cell phones, which contained the evidence used in the criminal charges now brought against Holland. SA Bigham was present during the search but she did not participate; instead, she waited outside with other GBI officers while interviewing Holland.

Holland moved to suppress the search of his home, the seizure of the phones, and, in turn, the search of the phones. The Magistrate Judge determined that the totality of the circumstances established reasonable suspicion that Holland had breached the conditions of his release and recommended denying Holland's motion. The District Court adopted the Magistrate Judge's recommendation, leading to this appeal.

## II.

Holland claims that the District Court erred in concluding that Officer Brewer had reasonable suspicion that he was violating his supervised release terms. He says Officer Brewer's suspicion was based on stale information because the Instagram photos were posted a year before the search. He also contends that the "sexually oriented material" clause rendered his compliance contract overly broad and void for vagueness.

The Government responds that the officers' collective knowledge before the search provided reasonable suspicion. It asserts that Holland's staleness argument overlooks the totality of the circumstances known to the officers.

In reply, Holland concedes that Officer Brewer only needed reasonable suspicion of a violation or a new crime but attacks the use of the officers' collective knowledge. Holland maintains that the collective knowledge doctrine applies only if officers act as a team and request action from one another, which, per Holland, was not the case here.

## III.

This Court reviews a district court's denial of a motion to suppress *de novo*. *United States v. Carter*, 566 F.3d 970, 973 (11th Cir. 2009) (per curiam). We view all evidence in the light most favorable to the prevailing party. *Id*.

"The touchstone of the Fourth Amendment is reasonableness . . . ." *United States v. Knights*, 534 U.S. 112, 118, 122 S. Ct. 587, 591 (2001). We assess the reasonableness of a search by balancing

its intrusion upon an individual's privacy against its necessity for advancing legitimate government interests. *See id.* at 118–19, 122 S. Ct. at 591. A search may be supported by reasonable suspicion "[w]hen a probationer has a condition of probation reducing his expectation of privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history." *Carter*, 566 F.3d at 975. "Such limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society." *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982).

"Reasonable suspicion consists of a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (quoting *Knights*, 534 U.S. at 121, 122 S. Ct. at 592). Courts will look to the totality of the circumstances of each case and determine whether the officer had a "particularized and objective basis for suspecting legal wrongdoing." *Id.* (quoting *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003)). "The officer must 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" the search. *Id.* (quoting *United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir. 2003)).

Reasonable suspicion is also determined from the collective knowledge of the officers. *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006) (per curiam). To examine collective

knowledge, the officers must have at least maintained "a minimal level of communication during their investigation." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985). In *United States v. Esle*, this Court held that there was ample communication to apply the collective knowledge principle where one officer, who had probable cause for a search, was in contact with a second officer in setting up the search and was present in the vicinity at the time of the search, and the second officer testified that another agent told him about the basis for the probable cause. 743 F.2d 1465, 1476 (11th Cir. 1984) (per curiam), *overruled on other grounds by United States v. Blankenship*, 382 F.3d 1110, 1122 n.23 (11th Cir. 2004).

Moreover, reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (per curiam) (alteration in original) (quoting *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004)).

Here, Officer Brewer and SA Bigham had a "particularized and objective basis for suspecting" that Holland was violating the conditions of his release. When the search occurred, they knew that four erotic images of minor boys were uploaded from an Instagram account traced to the phone number on Holland's driver's license and that the Instagram account's username, "Yung In Atl," signified that the user lived in Atlanta, where Holland lives. They also knew that Holland had a history of possessing child pornography and a sexual interest in minor boys; that he had a high risk of

reoffending, as shown by his psychosexual evaluation and criminal history; that in 2015 he used unauthorized devices and exchanged pornography with men from prison; and that in January 2017 he possessed seven unauthorized cell phones. Together, these facts reasonably warranted the search.

As to the collective knowledge doctrine, sufficient communication existed between SA Bigham and Officer Brewer to examine their collective knowledge. Once SA Bigham believed Holland uploaded the images, she provided Officer Brewer with a synopsis of her investigation. Officer Brewer then gave SA Bigham information about Holland's criminal history. Like the officers in *Else*, Officer Brewer and SA Bigham then had several follow-up conversations to coordinate the search, which SA Bigham was on-site for. *See Esle*, 743 F.2d at 1476.

Holland's argument that the Instagram images are not sexually oriented material prohibited by his conditions of supervised release fails. The images posted to Instagram, even if not themselves sexually oriented, supported a reasonable suspicion that Holland possessed other material that was sexually oriented and that he was violating the terms of his supervised release.

Holland's staleness argument also fails. The staleness doctrine requires that information supporting reasonable suspicion exist at the time of the search. *United States v. Touset*, 890 F.3d 1227, 1237–38 (11th Cir. 2018). That said, there is no rule or set time limit for when information becomes stale. *Id*. at 1238. We determine staleness by evaluating a case's particular facts, including the time,

the suspected crime's nature, the accused's habits, the character of the items sought, and the nature and function of the premises to be searched. *Id.*

In child pornography cases, we have recognized that evidence is less susceptible to staleness. *See id.* This is so for two reasons. First, given the challenges in obtaining it, collectors of child pornography tend to hold onto their sexually explicit materials, rarely if ever disposing of them. *See id.* Second, because the material is stored electronically, it does not spoil or get consumed like other evidence and can remain on a device after deletion. *See Touset*, 890 F.3d at 1237–38. In *Touset*, we held that evidence of the defendant's payments to a Western Union account linked to a phone number that was associated with an email address containing child pornography "was not stale about a year and a half later." *See id.*

We are persuaded that the above reasoning applies here. The information connecting the Instagram account used to upload explicit images of prepubescent boys and the phone number on Holland's driver's license was not stale over a year later when Officer Brewer searched Holland's home.

## IV.

Holland also argues for the first time on appeal that the term of his supervised release prohibiting him from possessing sexually oriented material is void for vagueness. Even so, the very nature of the photographs uploaded to Instagram—independent of their status as a violation of that term of his supervised release—

combined with the other factors discussed above, does not negate reasonable suspicion that Holland was violating other terms of his supervised release, like accessing the internet and possessing unauthorized cellphones. So, the exact definition of "sexually oriented material" as a violation of Holland's compliance contract is irrelevant to whether the officers had reasonable suspicion. Thus, this Court need not consider Holland's argument that the term "sexually oriented material" is unconstitutionally vague.

## V.

Because the totality of circumstances and collective knowledge of the officers support a reasonable suspicion that Holland was violating the conditions of his supervised release at the time the search was executed, the District Court's judgment is

**AFFIRMED.**