[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 27, 2007
THOMAS K. KAHN
CLERK

----------------------------------------
No. 06-12569
Non-Argument Calendar
----------------------------------------

D.C. Docket No. 04-00597-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK JONES,
a.k.a. Derrick Dwayne Jones,

Defendant-Appellant.

-----------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
-----------------------------------

**(February 27, 2007)**

Before EDMONDSON, Chief Judge, CARNES and DUBINA, Circuit Judges.

PER CURIAM:

Defendant-Appellant Derrick Jones appeals his convictions and sentences

after a jury trial for (1) possession with intent to distribute cocaine base (crack), 21

U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) and 851, (2) possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), (b)(1)(D) and 851, and (3) being a felon in possession of a firearm, 18 U.S.C. § 922(g). No reversible error has been shown; we affirm.

In this case, police officers, who had a warrant authorizing Jones's arrest, went to an Atlanta-area hotel looking for him. Officers first went to room 306, where Jones had registered as a guest under a false name; but officers later found Jones in room 514 and arrested him. Jones raises several issues on appeal; and we will consider each claim in turn.

A.    Admission of Lay Testimony by Officer Kevin Otts

Jones argues that the district court erred in allowing Officer Otts to testify as a lay witness. We review the district court's evidentiary rulings for abuse of discretion. United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002). Federal Rule of Evidence 701 provides that evidence offered by a lay witness is admissible when the opinions or inferences are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[1]

Here, Officer Otts's testimony included (1) how the narcotics seized in this case were packaged, (2) the street value of the seized drugs, (3) that firearms are used for protection because the narcotics business is dangerous, and (4) that, through his experience, Officer Otts had learned that the quantity and packaging of narcotics can indicate whether narcotics are intended for distribution and that the marijuana quantity seized in this case indicated that it was intended for distribution.

We have explained that officers can testify as lay witnesses "based upon their particularized knowledge garnered from years of experience within the field." Tampa Bay Shipbldg. & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003) (considering officer testimony in criminal cases). And we have permitted officers testifying as lay witnesses to "give opinion testimony

---

[1]Federal Rule of Evidence 702 discusses expert testimony in this way:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

based on their perceptions and on their experience as police officers about the meaning of code words employed by the defendants in their intercepted telephone conversations." United States v. Novaton, 271 F.3d 968, 1009 (11th Cir. 2001).[2] For these reasons, the district court did not abuse its discretion in determining that Officer Otts's testimony was permitted by Fed.R.Evid. 701.[3] See United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir.), cert. denied, 126 S.Ct. 247 (2005) (applying post-amendment version of Rule 701 and concluding that officer's testimony -- about (1) how a "drug point" works and (2) that heroin often is "packed in aluminum decks" and the heroin seized was "in the shape or manner of a deck" -- was lay testimony).

B.    Admission of Physical Evidence and Statements Made by Jones

---

[2] Rule 701 was amended in 2000 to add subsection (c). Although Novaton concerned application of the pre-amendment version of Rule 701, we have opined that Novaton does not "require a different finding after Rule 701's amendment." See Tampa Bay Shipbldg., 320 F.3d at 1223 n.17.

[3] Jones's reliance on our decisions in United States v. Garcia, 447 F.3d 1327 (11th Cir. 2006), and United States v. Dulcio, 441 F.3d 1269 (11th Cir. 2006), is misplaced. In Garcia, we explained that the district court did not abuse its discretion in permitting an officer to testify as an expert witness about, among other things, "how drug trafficking operations compartmentalize certain operations and roles"; but we did not discuss whether a police officer can testify as a lay witness. 447 F.3d at 1334-35; see Fed.R.Evid. 701 advisory committee's note on 2000 amendment ("Certainly it is possible for the same witness to provide both lay and expert testimony in a single case."). And, unlike the present case, Dulcio concerned an officer's specialized testimony about "the modus operandi of people involved in the drug business, tying each co-defendant's role to that typically seen in a narcotics importing business." 441 F.3d at 1274-75.

4

Jones challenges the admission of evidence seized from the hotel where he was arrested as well as statements made to federal agent Joel Sheppard. "As rulings on motions to suppress involve mixed questions of fact and law, the district court's factual findings are reviewed under the clearly erroneous standard, while that court's application of the law is subject to de novo review." United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994). And we construe all facts in the light most favorable to the prevailing party, in this case the government. United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994).

1.     Contraband Found in Room 514

When officers found Jones in room 514, he was lying face down on the floor behind a couch with his hands underneath him. Jones struggled as officers pulled out his hands. An officer sat on Jones's back and handcuffed him. Officers saw a black translucent bag underneath Jones where his hands had been positioned. Officers brought Jones up so that he was kneeling; and the black bag remained on the floor in front of him. Officers opened the black bag, which contained a substance broken into chunks later determined to be crack cocaine, a handgun, and marijuana that was divided into smaller baggies. The district court determined that the search of the bag was permissible as a search incident to an arrest.

Jones argues that the search of the black bag was not a valid search incident to his arrest because the circumstances of his arrest -- including that he was handcuffed and walking to another part of the hotel room when the bag was searched and that several officers were present -- indicate that he likely could not have obtained the bag's contents.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 94 S.Ct. 467, 471 (1973). This exception provides that officers may search "the arrestee's person and the area within his immediate control." Chimel v. California, 89 S.Ct. 2034, 2040 (1969) (explaining that a "gun on a table or in a drawer" in front of the arrestee can be dangerous to the arresting officer). "Such searches have long been considered valid because of the need 'to remove any weapons that the arrestee might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." New York v. Belton, 101 S.Ct. 2860, 2862 (1981) (quoting Chimel, 89 S.Ct. at 2040).

Here, officers searched the black bag -- on which Jones was laying -- pursuant to a lawful search incident to an arrest. Jones was still in the hotel room when the officers secured the bag; and the person who opened the door to room 514 for the police was standing just outside of the room. Jones has not pointed us

6

to controlling authority indicating that officers could not search the black bag

because Jones was restrained; instead, Jones concedes that some courts have

supported a search incident to arrest under similar circumstances. See, e.g., United

States v. Romero, 452 F.3d 610, 619-20 (6th Cir. 2006) (explaining that search of

nightstand was permissible because nightstand would have been within

handcuffed defendant's reach had he not been handcuffed); United States v.

Queen, 847 F.2d 346, 349, 353-54 (7th Cir. 1988) (permitting search where

arrestee was handcuffed behind his back and guarded by two armed officers before

search of closet three feet away). The district court did not err in denying Jones's

motion to suppress evidence seized from the black bag in room 514.[4]

2.     Jones's Statements to Agent Sheppard

Agent Sheppard drove Jones from a local jail to the federal building in

Atlanta. During the drive, Agent Sheppard read Jones his Miranda rights and then

---

[4]Before officers found Jones in room 514, officers searched room 306 with the permission of Jones's girlfriend, Quarletta Morris. After officers determined that Jones was not in room 306, Morris insisted repeatedly that she needed to use the bathroom. Before letting Morris use the bathroom, an officer, who testified he had been involved with cases where suspects had hidden weapons in toilet tanks, searched the toilet tank of room 306's bathroom and discovered a plastic bag containing marijuana. On appeal, Jones argues that the search of the toilet tank exceeded the scope of intrusion allowed by the Fourth Amendment. The seizure of marijuana in room 514 during Jones's arrest was not unlawful; and even if we were to assume that the search of the toilet tank violated the Fourth Amendment, such error "does not necessarily result in an automatic reversal of the conviction." See United States v. Khoury, 901 F.2d 948, 960 (11th Cir. 1990) (explaining that "the harmless error doctrine applies to a fourth amendment violation"). Here, the jury could consider that officers lawfully seized the marijuana possessed by Jones in room 514.

7

asked Jones if Jones was willing to be questioned. Jones replied that he had questions about the charges brought against him. Agent Sheppard told Jones that Jones faced federal charges resulting from the discovery of crack cocaine, a firearm, and marijuana on the day of his arrest at the hotel. Jones then told Agent Sheppard that the crack cocaine belonged to "Tae" and that he never possessed a firearm.

Jones contends that he did not voluntarily waive his rights to remain silent and to have a lawyer present because Agent Sheppard suggested that he would not tell Jones about Jones's charges unless Jones waived his <u>Miranda</u> rights. Jones does not dispute that he received <u>Miranda</u> warnings from Agent Sheppard before he made the statements in question. After a careful review of the record, we conclude that Jones was informed of his <u>Miranda</u> rights and voluntarily waived his rights in speaking to Agent Sheppard without a lawyer.

C.  <u>Sufficiency of the Evidence</u>

"Sufficiency of the evidence is a question of law we review <u>de novo</u>." <u>United States v. Quinn</u>, 123 F.3d 1415, 1426 (11th Cir. 1997). "[W]e view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the jury's verdict." <u>Id.</u>

1.  Possession of Contraband from Room 514

Jones contends that the government did not present sufficient evidence that he possessed the contraband found in the black bag during his arrest in room 514. Possession "can be demonstrated by proof of either actual or constructive possession. To establish constructive possession, the government must show ownership, dominion, or control over" the possessed item. United States v. Glover, 431 F.3d 744, 748 (11th Cir. 2005) (internal quotation and citation omitted). Although a witness testified that she saw Jones enter room 514 with only a pack of cigarettes, several officers testified that Jones was laying face down on top of a black bag -- with his hands on or near the bag -- when he was arrested. Viewing this evidence in the light most favorable to the government, we conclude that a reasonable jury could find Jones had constructive possession of the gun and narcotics found in the black bag.[5]

2.      Possession of Crack Cocaine

Jones next asserts that the evidence presented at trial was insufficient to establish that the substance seized in the black bag was crack cocaine. He argues that, because the evidence did not support a finding that he possessed crack

---

[5]We need not address Jones's argument about whether he possessed the marijuana found in room 306 because evidence of possession of that marijuana is not necessary to uphold Jones's conviction. And to the extent that Jones argues that the government did not offer sufficient evidence showing that he intended to distribute narcotics, Jones has abandoned this argument because he did not raise it until his reply brief. See United States v. Britt, 437 F.3d 1103, 1104 (11th Cir. 2006) (we decline to consider issues raised for the first time in reply brief).

cocaine, he should have been sentenced only for possession of cocaine hydrochloride. We disagree.

The Sentencing Guidelines define "cocaine base" as "crack" cocaine. U.S.S.G. § 2D 1.1(c) n.D. "'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Id. At Jones's trial, Shenika Linen, a forensic chemist with the Georgia Bureau of Investigation, testified that she performed an infrared spectroscopy test on the "off-colored chunks" found in the black bag; and the substance tested positive for cocaine base. Linen also testified that the substance weighed about 10 grams. Linen's testimony provided sufficient evidence from which the jury could determine that Jones possessed crack cocaine; and the district court did not err in calculating Jones's advisory Guidelines range based on his possession of crack cocaine.

3.    Nexus Between Firearm and Interstate Commerce

Jones argues that, although the evidence showed that the firearm in this case had been manufactured in California and was seized in Georgia, the government did not prove that the firearm sufficiently impacted on interstate commerce.[6] He

---

[6]"To obtain a conviction for being a felon in possession of a firearm [under 18 U.S.C. § 922(g)], the prosecution must prove beyond a reasonable doubt that the defendant was (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce."

asserts that we should revisit our prior decisions that explain section 922(g) requires only a minimal nexus to interstate commerce. Because "[o]nly a decision by this court sitting en banc or by the United States Supreme Court can overrule a prior panel decision," United States v. Machado, 804 F.2d 1537, 1543 (11th Cir. 1986), and because the evidence here was sufficient to show that the firearm affected interstate commerce, we reject Jones's argument.

AFFIRMED.

---

Glover, 431 F.3d at 748 (internal quotation omitted).