[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15490
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cr-10017-JLK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON TIMOTHY WASSER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 26, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Jason Timothy Wasser appeals his conviction for possession of a firearm and ammunition by a conviction felon.  We affirm.

## I. BACKGROUND

In February 2012, Wasser entered a no-contest plea to a state charge of carrying a concealed firearm in Indian River County, Florida.  He was sentenced to 18 months of probation.  He was subject to the following conditions of probation: (1) he must not possess, carry, or own any firearm or weapon without first procuring the consent of his probation officer; and (2) he must "promptly and truthfully answer all inquiries directed to [him] by the court or the officer, and allow [his] officer to visit in [his] home, at [his] employment site or elsewhere," and he must comply with his probation officer's instructions.  ROA at 114.

On May 5, 2013, the Federal Bureau of Investigation ("FBI") received an anonymous tip that Wasser may be in possession of firearms and narcotics.  The FBI informed Florida probation officers of the tip.  Wasser's probation officer, Cheryl Blyth, planned a probation compliance visit and warrantless search of Wasser's residence based on the anonymous tip.  Probation Officer Blyth was concerned about the tip, because she knew of Wasser's prior firearms offense and that he was not to possess any firearms, drugs, or weapons.  She also knew Wasser was a member of the Pagan Motorcycle Club, a gang involved in extortion, drug sales, prostitution, and other crimes.

2

Probation Officer Blyth requested additional probation officers to assist her with the search, and she asked Special Agent Todd Blyth of the Department of Homeland Security and Key West Detective Michael Chaustit to provide security during the visit.  On May 7, 2013, they visited Wasser's residence.  When Wasser opened the door, Probation Officer Blyth informed him they were there for a probation visit and asked to enter the home.  Wasser consented.  Upon entering the residence, probation officers and law enforcement observed in plain view swords, combat knives, and what appeared to be a firearm in a display case.[1]  Wasser's possession of those items constituted a violation of his probation conditions.

The probation officers subsequently began to search the residence.  Special Agent Blyth and Detective Chaustit did not participate in the search.  Special Agent Blyth guarded Wasser and other occupants of the residence, who were seated on a couch, while Detective Chaustit provided security outside.  During the search, probation officers found numerous additional knives, a bulletproof vest, and marijuana.  Upon the discovery of the marijuana, Detective Chaustit asked the probation officers to stop the search so he could apply for a search warrant.  Meanwhile, Special Agent Blyth informed Wasser he was under arrest and read Wasser his *Miranda*[2] warnings.

---

[1] The firearm later was determined to be a replica.
[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

Several hours later, Detective Chaustit returned with a warrant. Law enforcement officers then searched Wasser's residence and found 3 firearms, over 200 rounds of ammunition, and 2 sets of brass knuckles, among other items. Wasser purportedly admitted owning one firearm, which had been found in his bedroom closet.

On May 22, 2013, a federal grand jury charged Wasser with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Wasser pled not guilty to the charge and moved to suppress all physical evidence and statements obtained from the search of his residence. In his motion to suppress, Wasser argued his conditions of probation did not require him to submit to warrantless searches of his home. Rather, his conditions required he consent only to visits. He further argued the Fourth Amendment's protection against unreasonable searches and seizures applied to him, even though he was on probation, and probation officers needed at least reasonable suspicion to search his residence without a warrant. Wasser argued probation officers lacked reasonable suspicion, however, because they planned the warrantless search of his home based on an unreliable, anonymous tip. He also asserted law enforcement officers actually controlled the initial search of his home, rather than probation officers, which required a higher level of suspicion to conduct the search. He contended all evidence obtained from the unlawful probation search must be suppressed. He

4

argued all evidence discovered after the issuance of the search warrant, which was obtained based on evidence discovered during the allegedly illegal search, likewise must be suppressed as fruit of the poisonous tree.

Following a hearing on the motion to suppress, a magistrate judge recommended denying the motion. The magistrate judge rejected Wasser's argument that probation officers needed reasonable suspicion to search his home and concluded, under the totality of the circumstances, the probation officers' initial search was constitutional under the Fourth Amendment and as interpreted by the Supreme Court of Florida in *Grubbs v. State*, 373 So. 2d 905 (Fla. 1979).[3] Because probation officers were entitled to be in Wasser's residence and to gather evidence, they also were entitled to give that evidence to law enforcement officers to apply for a search warrant. The magistrate judge also rejected Wasser's contention that law enforcement officers controlled the initial search, finding the officers were present merely to provide security for probation.

The district judge adopted the magistrate judge's report and recommendation, over Wasser's objections. The judge agreed the initial search was controlled and conducted by probation officers, with law enforcement officers

---

[3] In *Grubbs*, the Supreme Court of Florida held that a probation officer may conduct a warrantless search of a probationer's residence without reasonable suspicion, as long as any evidence discovered is used only in probation violation proceedings. 373 So. 2d at 907. The court elaborated that probation officers and law enforcement officers must comply with customary Fourth Amendment requirements to use evidence seized from a probationer's residence in a new criminal proceeding. *Id.*

5

acting in a supporting role.  The judge also agreed the probation officers lawfully were permitted to conduct a warrantless search without probable cause or reasonable suspicion.

Thereafter, Wasser entered a conditional guilty plea to the charge, pursuant to a written plea agreement, and he reserved the right to appeal the denial of his motion to suppress.  The district judge accepted the plea and adjudicated Wasser guilty of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The judge sentenced Wasser to a term of imprisonment of one year and one day, followed by a one-year term of supervised release.

## II. DISCUSSION

On appeal, Wasser argues the district judge erred by denying his motion to suppress and asserts the investigative search of his home by probation officers lacked the requisite reasonable suspicion.  He argues the initial search of his home was not supported by reasonable suspicion, because the anonymous, uncorroborated tip that led to the search was not reliable.  In addition, he argues probation officers conducted the search on behalf of law enforcement officers, and thus, the search was actually a criminal investigation that must be supported by reasonable suspicion or probable cause.

In reviewing the denial of a motion to suppress, we review the district judge's findings of fact for clear error and application of law to those facts de

6

novo.  *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir.), *cert. denied*, 134 S. Ct. 342 (2013).  Further, all facts are construed in the light most favorable to the prevailing party below—in this case, the government.  *Id.*  We may affirm the district judge's judgment on any ground supported by the record.  *United States v. Smith*, 742 F.3d 949, 952 (11th Cir. 2014).

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  The Fourth Amendment's protection against unreasonable searches and seizures unquestionably applies to probationers.  *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982).  Probationers, however, have a diminished expectation of privacy and "are subject to limitations to which ordinary citizens are free."  *Id.* at 1367-68.  For instance, Wasser was subject to a limitation requiring him to submit to visits in his home by his probation officer.

We have not considered whether a probation condition so completely diminished a probationer's reasonable expectation of privacy that a search without reasonable suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.[4]  Nevertheless, we need not address this issue at this time,

---

[4] Rather, we have discussed whether probation officers and law enforcement officers need more than reasonable suspicion to conduct warrantless searches of probationers' homes. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 114, 121-22, 122 S. Ct. 587, 589, 592-93

because we conclude the probation officers had reasonable suspicion to search Wasser's residence.

"Reasonable suspicion consists of a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (citation and internal quotation marks omitted). We must examine the totality of the circumstances of each case to determine whether the officer has a particularized and objective basis for suspected legal wrongdoing. *Id.* An "inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required." *Id.* (citation and internal quotation marks omitted). To determine whether officers had reasonable suspicion to conduct a search, "we must take stock of everything they knew before searching." *Id.* "To have reasonable suspicion based on an anonymous tip, the tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir.

---

(2001) (holding warrantless search of probationer's home by law enforcement officer for investigatory purposes was reasonable, when conditions of probation included a search term and the search was supported by reasonable suspicion); *United States v. Carter*, 566 F.3d 970, 973-73 (11th Cir. 2009) (per curiam) (holding a warrantless search of a probationer's home by probation officers and based on reasonable suspicion was constitutionally permissible, when conditions of probation required the probationer to submit to home visits, but not searches); *United States v. Yuknavich*, 419 F.3d 1302, 1310-11 (11th Cir. 2005) (holding search of probationer's computer by probation officers was reasonable, even in the absence of a search provision, when conditions on probationer's computer use reduced his expectation of privacy in his computer).

2007) (citation and internal quotation marks omitted). "The issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion . . . ." *Id.* (citation and internal quotation marks omitted).

Probation officers were permitted to enter Wasser's home for a compliance visit without having reasonable suspicion of probation violations. A standard condition of Wasser's supervision directed him to allow his probation officer to visit in his home, at his employment site or elsewhere, and to comply with all instructions the officer may give. ROA at 114. Accordingly, Probation Officer Blyth was authorized, pursuant to Wasser's terms of probation, to enter Wasser's home on May 7, 2013, without having reasonable suspicion.

Although probation officers did not have reasonable suspicion to search Wasser's home based on the anonymous tip alone, *see Lindsey*, 482 F.3d at 1291 (stating an anonymous tip must be reliable and corroborated by independent police work to provide reasonable suspicion), they acquired reasonable suspicion of criminal activity as soon as they lawfully entered Wasser's residence. Upon entering the residence, they saw numerous swords and knives in plain view, and Wasser's possession of such weapons violated his conditions of probation. At that moment, the probation officers were aware of the following: (1) Wasser's prior weapons charge, (2) his involvement in the Pagans gang, (3) the anonymous tip

stating Wasser possessed drugs and guns, and (4) the presence of weapons in plain view.  Under the totality of the circumstances, probation officers had reasonable suspicion that Wasser had violated the terms of his probation and likely possessed additional prohibited items.  *Yuknavich*, 419 F.3d at 1311.  Therefore, they were permitted to search the residence to look for additional violations.  *See Smith*, 742 F.3d at 952 (stating we may affirm on any grounds supported by the record).

We also reject Wasser's contention that probation officers needed reasonable suspicion or probable cause to search his home, because they were conducting an investigatory search on behalf of law enforcement for use in a separate criminal proceeding.  Special Agent Blyth and Detective Chaustit did not participate in the probation officers' initial search.  Rather, they guarded Wasser and the other occupants of the house.  Law enforcement did not tell the probation officers to look for particular items or direct them to search in particular places.  The probation officers had reasonable suspicion to search the premises upon entering the residence.  Accordingly, the district judge did not err by denying Wasser's motion to dismiss, and we affirm.

**AFFIRMED.**