[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14950
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00242-CEM-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN DWAYNE RILEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 25, 2017)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

John Dwayne Riley appeals his conviction for possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), as well as the court's denial of his motion to suppress evidence found during a probationary search of his house, the court's refusal to declare a mistrial, and the court's reliance on non-binding authority. Riley was also convicted of possession with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). Riley was on community control, a form of probation akin to house arrest, when his probation officer received an anonymous tip indicating that Riley was selling drugs from his house. Probation officers visited Riley's house, where they saw what appeared to be cocaine in plain sight in the garage.

Riley raises four issues on appeal. First, he argues that the district court erred by concluding that there was reasonable suspicion to search his house. Second, he contends that the court erred by refusing to declare a mistrial after a witness provided testimony that violated the court's pretrial ruling on the exclusion of certain evidence. Third, Riley argues that the court erred by relying on unpublished decisions of this Court to support its evidentiary rulings. Fourth, Riley contends that the evidence adduced at trial was insufficient to support his § 924(c) conviction. We address each of the arguments below.

I.

Riley first contends that the court erred by concluding that there was reasonable suspicion to search his house and subsequently denying his motion to suppress the evidence found during that search because an uncorroborated anonymous tip, which merely provided information identifying him as the target of the tip, formed the basis of reasonable suspicion.

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of law to those facts *de novo*. *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir. 2013). Further, we construe all facts in the light most favorable to the prevailing party below—in this case, the government. *Id.* We may affirm the denial of a motion to suppress on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures applies to probationers, but probationers have a diminished expectation of privacy and "are subject to limitations to which ordinary citizens are free." *Owens v. Kelley*, 681 F.2d 1362, 1367–68 (11th Cir. 1982).

In *United States v. Knights*, 534 U.S. 112 (2001), the Supreme Court held that the warrantless search of a probationer's home by a law enforcement officer for investigatory purposes was permissible, even though it was supported by only a reasonable suspicion, rather than probable cause, that criminal conduct was occurring. 534 U.S. at 121–22. The probationer was subject to a condition requiring him to submit to searches of his residence by any probation officer or law enforcement officer at any time, with or without a search warrant, warrant of arrest, or reasonable cause. 534 U.S. at 114. A sheriff's detective decided to search the probationer's apartment after observing suspicious objects in the probationer's trunk, and, aware of the probationer's search condition, did not apply for a warrant. *Id*. at 115.

The Court stated that "the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 118–19 (quotation omitted). Balancing these competing considerations, the Supreme Court noted that a probationer does not enjoy the same amount of liberty as other citizens. *Id.* at 119. It further noted that probationers are more likely to commit crimes than other citizens, and the government therefore has an interest in keeping close watch over them. *Id.* at 120. Furthermore, probationers have a greater incentive to conceal the evidence of their

4

crimes, because they are subject to greater scrutiny than the average citizen. *Id.* The Supreme Court determined that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of th[e] probationer's house." *Id.* at 121.

In *United States v. Yuknavich*, 419 F.3d 1302 (11th Cir. 2005), we followed *Knights* and concluded that reasonable suspicion was all that was required to search a probationer's computer, even where the probation agreement limited his internet use to work related purposes during work hours but did not require him to submit to warrantless searches. *Yuknavich*, 419 F.3d at 1309–11. We reasoned that the conditions on the probationer's computer use reduced his expectation of privacy in his computer; thus, the search of the computer was permissible based only on reasonable suspicion. *Id.* at 1310–11.

In *United States v. Carter*, 566 F.3d 970 (11th Cir. 2009), we followed the reasoning in *Yuknavich* and again found that a warrantless search of a probationer's home by probation officers and based on reasonable suspicion was constitutionally permissible, even in the absence of a condition of probation permitting such a search. *Carter*, 566 F.3d at 973–75. We applied the balancing test articulated in *Knights* and concluded that reasonable suspicion was the correct standard for analyzing the reasonableness of the search at issue in that case. *Id.* at 974. Examining the probationer's privacy interests, we noted that Carter did not

5

enjoy the absolute liberty to which every citizen is entitled. *Id.* In addition, he was required to submit to visits by the probation officer at his home, workplace, or elsewhere, and the government had a competing interest in preventing him from committing further crimes. *Id.*

We held that, although the probationer possessed a higher expectation of privacy than the defendants in *Knights* and *Yuknavich* because he lacked an express search condition or a condition limiting his computer use, a condition of probation requiring him to submit to home visits by his probation officer nevertheless reduced his expectation of privacy. *Id.* at 975. We concluded that when "a probationer has a condition of probation reducing his expectation of privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history, a search can be permissible when supported only by reasonable suspicion." *Id.* The probation officers had reasonable suspicion to search Carter's home due to evidence of a pattern of conduct over a two-year period that indicated Carter was engaged in criminal activity, including just two weeks before the search occurred. *Id.*

Based on *Carter*, probation officers are required to have reasonable suspicion of criminal conduct in order to search a probationer's residence when the terms of probation do not require him to submit to warrantless searches. *See id.* at 974–75. Reasonable suspicion consists of a sufficiently high probability that

6

criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. *Yuknavich*, 419 F.3d at 1311. We must examine the totality of the circumstances of each case to determine whether the officer has a particularized and objective basis for suspected legal wrongdoing. *Id.* An "inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required." *Id.* (quotation omitted). Thus, to determine whether officers had reasonable suspicion to conduct a search, we must "take stock of everything they knew before searching." *Id.* "To have reasonable suspicion based on an anonymous tip, the tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (quotation omitted). The issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion. *Id.*

Here, the district court did not err by denying Riley's motion to suppress. Before entering Riley's house, the probation officers were aware of the following: (1) Riley had a prior cocaine-related conviction,[1] (2) the anonymous tip indicated

---

[1] Citing to *Carter*, Riley asserts for the first time on appeal that his prior cocaine conviction could not have supported a finding of reasonable suspicion for the probationary search because it preceded the search by a decade and thus was stale. Because Riley did not object to the reliance on the decade-old cocaine conviction before the district court, we review the issue only for plain error. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). We developed a staleness doctrine in the context of whether probable cause exists for a warrant. *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). However, no binding precedent from this Court or the Supreme Court exists indicating that the staleness doctrine applies in the context of warrantless

7

that Riley was selling drugs from the house, (3) Riley's community control prohibited him from possessing any drugs or visiting places where drugs were sold or used, (4) the anonymous tip indicated that Riley was driving a white Audi, and (5) Riley was placed on community control because he had been driving without a license; hence, he could not legally drive. Armed with all of this information, probation officers had reasonable suspicion to suspect that Riley was in violation of his probation and that there were possibly drugs or other prohibited items at his residence. *See Yuknavich*, 419 F.3d at 1311. This provided the probation officers with a basis to lawfully conduct the probationary search, which included the ability to enter Riley's garage, where probation officers observed what appeared to be cocaine in plain view in the Audi. Once the probation officers discovered the contraband, they stopped their search and turned it over to law enforcement to procure a search warrant. Thus, the probation officers acted lawfully, and the court did not err by denying Riley's motion to suppress the fruits of the lawful search.

## II.

Riley argues that the court erred by refusing to declare a mistrial after his probation officer violated the court's pretrial ruling excluding evidence that the

---

probationary searches subject to the reasonable suspicion standard. In *Carter*, we only stated that there was no staleness problem in that case, and did not announce a rule applying the staleness doctrine to probationary searches for which there must be reasonable suspicion. *See Carter*, 566 F.3d at 975. Because no precedent from the Supreme Court or this Court directly resolves the issue, there is no plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

8

tipster mentioned the sale of drugs at Riley's house, as it concerned the ultimate issue of whether Riley distributed cocaine. Riley contends that the violation of the pretrial ruling violated his Sixth Amendment right of confrontation.

We review *de novo* the scope of constitutional rights. *United States v. Cantellano*, 430 F.3d 1142, 1144 (11th Cir. 2005). However, we review the denial of a motion for a mistrial for abuse of discretion. *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005). That standard recognizes that the district court possesses a range of choices; thus, so long as its decision does not amount to a clear error of judgment, we will not disturb the decision, even if we would have chosen differently. *United States v. Lopez*, 649 F.3d 1222, 1236 (11th Cir. 2011).

The Confrontation Clause prohibits the admission of testimonial hearsay evidence at trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004); U.S. Const. amend. VI. The Confrontation Clause does not, however, bar the use of non-hearsay testimonial statements. *See Crawford*, 541 U.S. at 59 n.9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). The Federal Rules of Evidence define hearsay as a statement that a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). We previously held that "[s]tatements by out of court witnesses to law enforcement officials may

9

be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement." *United States v. Baker*, 432 F.3d 1189, 1208 n.17 (11th Cir. 2005), *abrogated in part on other grounds by Davis v. Washington*, 547 U.S. 813 (2006) (holding, contrary to *Baker*, that the Confrontation Clause does not apply to non-testimonial hearsay).

Here, the testimony regarding the anonymous tip was admitted to explain the reason that probation officers conducted a visit of Riley's house, and not for the truth of the matter asserted. Thus, it was not hearsay. Furthermore, it did not implicate the Confrontation Clause because the probative value of the statement's non-hearsay purpose—explaining why the probation officer conducted the home visit—was not substantially outweighed by the danger of unfair prejudice, where the other trial evidence included far more incriminatory descriptions of the extensive drugs found at Riley's house. *See Baker*, 432 F.3d at 1208 n.17; *Crawford*, 541 U.S. at 59 n.9.

Furthermore, when the court denied Riley's motion for a mistrial, it noted that the statement violated its pretrial ruling limiting testimony of the tip to reports of unlawful activity in the home. However, the statement did not address the ultimate issue in the case, as the probation officer never stated the tipster accused

10

Riley of selling drugs, or even personally possessing the drugs. Given the limited nature of the violation of the pretrial ruling, especially considering that the court permitted mention of unlawful conduct, the court's decision to deny Riley's motion did not amount to a clear error of judgment. *See Lopez*, 649 F.3d at 1236. Hence, it was within the court's discretion to deny Riley's motion for a mistrial.

III.

Riley also argues that the district court erred as a matter of law by relying on unpublished decisions of this Court in making three evidentiary rulings: (1) concluding that reasonable suspicion existed for the probationary search, relying on *Wasser*, 586 F. App'x at 504-05; (2) allowing the admission of evidence of drugs found in his house other than cocaine, relying on *United States v. Caton*, 294 F. App'x 490, 494-95 (11th Cir. 2008); and (3) allowing a law enforcement agent to testify as a lay witness regarding the relationship between firearms and drugs, relying on *United States v. Jones*, 218 F. App'x 916, 917 (11th Cir. 2007). Regarding the third ruling, Riley contends that reliance on *Jones* prejudiced him, because his counsel indicated that he would have prepared differently if he had known that an expert witness would testify. Further, Riley argues that it prejudiced him because the officer's testimony regarding the street value of the cocaine and drug dealers' use of firearms as protection invaded the province of the jury by

11

speaking to an ultimate issue in the case—a factual determination of whether Riley's gun was used in furtherance of his drug offense.

We review rulings regarding the admissibility of lay opinion testimony for abuse of discretion. *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011). A non-expert witness may give opinion testimony if the testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Subsection (c) was added to the Rule in 2000 to prevent expert testimony from being offered nominally as lay opinion testimony. *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). Federal Rule of Evidence 702 governs the testimony of a witness qualified as an expert. Fed. R. Evid. 702.

In *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001), we held that the district court did not abuse its discretion in permitting agents to give opinion testimony under pre-amendment Rule 701 regarding the meaning of code words based on their experience as police officers. *Novaton*, 271 F.3d at 1009. However, we noted that after the 2000 amendments to Rule 701, the admissibility of such testimony under Rule 701 was an open question. *Id.* at 1009 n.9. We later noted that the 2000 amendments did not alter our Rule 701 jurisprudence where law enforcement officers testify as lay witnesses. *See Tampa Bay Shipbuilding &*

12

*Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 & n.17 (11th Cir. 2003) (civil case holding that, like the police officers in *Novaton*, Tampa Bay's witnesses testified based upon their particularized knowledge garnered from years of experience within the field, and noting that we found no basis to determine that *Novaton* required a different finding under Rule 701's amendment).  Thus, lay witnesses may testify based upon their particularized knowledge garnered from years of experience within a field.  *Id.* at 1223.

Eleventh Circuit Rule 36-2 provides that unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.  11th Cir. R. 36-2.  Unpublished opinions are persuasive only insofar as their legal analysis warrants.  *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (*citing United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004)).

We may decline to address an argument where a party fails to provide arguments on the merits of an issue or provide legal support, because the issue is deemed waived without such argument.  *United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006).  Unlike forfeited claims, waived claims are not reviewed on appeal.  *United States v. Lewis*, 492 F.3d 1219, 1220–21 (11th Cir. 2007) (*en banc*); *see* Fed. R. Crim. P. 52(b).

13

As an initial matter, Riley does not make any arguments on the merits as to how reliance on *Wasser* or *Caton* was erroneous, nor does he provide any legal support for his contentions that such reliance was reversible error. Thus, we decline to address those issues, as they have been waived. *See Gupta*, 463 F.3d at 1195; *Lewis*, 492 F.3d at 1220-21.

The court did not err by relying on *Jones* as persuasive authority in permitting the officer to testify as a lay witness. The court's reliance on unpublished opinions of this Court was not improper, because the court understood the persuasive nature of the unpublished decisions, and Riley does not show that the court's analyses were erroneous. Further, the officer's lay testimony, based on particularized knowledge garnered from years of experience within the field of narcotics investigations, was not prohibited by Rule 701(c).

## IV.

Riley argues that the evidence was insufficient to support his conviction for the § 924(c) charge. He first contends that there was insufficient evidence for the jury to reasonably infer that he constructively possessed the gun. Second, he asserts that a reasonable juror would not be able to make the series of inferential leaps to establish the "in furtherance" prong without resorting to speculation.

When the defendant challenged the sufficiency of the evidence by an appropriate motion for judgment of acquittal, we review *de novo* whether sufficient

14

evidence supports a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).

In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). Accordingly, we sustain a defendant's conviction as long as it is supported by a reasonable basis in the record. *Id.* Whether the evidence is direct or only circumstantial, we will accept all reasonable inferences that tend to support the government's case. *United States v. Williams,* 390 F.3d 1319, 1324 (11th Cir. 2004). It is not required that the evidence exclude every reasonable hypothesis of innocence in order for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (*en banc*). Thus, the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.*

Section 924(c) provides enhanced penalties for possessing a firearm in furtherance of any drug trafficking crime for which a defendant is prosecuted. 18 U.S.C. § 924(c)(1)(A). To establish a § 924(c) violation, the government must show that the defendant (1) knowingly (2) possessed a firearm (3) in furtherance of any drug trafficking crime for which he could be prosecuted in a court of the United States. *United States v. Williams*, 731 F.3d 1222, 1232 (11th Cir. 2013).

Possession may be actual or constructive. *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004). To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm. *Id.*

A firearm is possessed in furtherance of a drug trafficking offense when the firearm aided, advanced, or promoted the underlying offense. *Williams*, 731 F.3d at 1232. The presence of a gun within the defendant's dominion and control during a drug-trafficking offense is not sufficient, by itself, to sustain a § 924(c) conviction. *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002) (holding that evidence was sufficient to sustain a guilty verdict where agents found two loaded firearms on top of an oven, an empty ammunition box inside the oven, a bullet-proof vest in a closet, $350 in a stove drawer, and a total of 35.67 grams of crack cocaine). In order to prove the "in furtherance" element, the government must show some nexus between the gun and the drug trafficking offense. *Id.* at 1253. This nexus can be established by: the type of drug activity being conducted, the accessibility of the gun, the type of gun, whether the gun was stolen, whether the gun was possessed legally, whether the gun was loaded, the gun's proximity to drugs or drug profits, and the time and circumstances under which the gun is found. *Id.*

Viewed in the light most favorable to the government, the evidence was sufficient to support Riley's § 924(c) conviction.  The jury could have reasonably inferred that Riley had constructive possession of the gun because it was found next to his hands and Riley was the only resident of the house when the gun was found.  Furthermore, there was a reasonable basis in the record from which the jury could conclude that Riley possessed the gun in furtherance of the drug crime, given that the gun was found near more than 1000 grams of cocaine, the gun was not possessed legally, and the gun was loaded.

In conclusion, upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**